380 A.2d 473

COMMONWEALTH of Pennsylvania

v.

Mark Stephen DEMCHAK, Appellant.

Superior Court of Pennsylvania.

Submitted Sept. 13, 1976.

Decided Dec. 2, 1977.

James A. Naddeo, Clearfield, for appellant.

Thomas F. Morgan, District Attorney, Clearfield, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

On November 12, 1974, appellant and a co-defendant, David Garrell, were arrested by the Clearfield Borough Police on a charge of violating the Drug, Device and Cosmetic Act.[1] Garrell pleaded guilty and is not a party to this appeal. Appellant was tried by a jury and found guilty on June 2, 1975. On November 6, 1975, the lower court sentenced appellant to pay one dollar and costs and to a term of thirty days to one year in prison. This appeal followed.

On November 12, 1974, Officer Ronald Smith of the Lawrence Township Police Department saw an automobile operated by appellant go through a stop sign and into a gas station. Since the gas station was in Clearfield Borough, Officer Smith radioed the Clearfield Borough Police, requesting that they meet him and his partner at the gas station. Before the Clearfield Borough Police arrived, Officer Smith saw appellant and another man get out of the automobile and walk towards the restroom of the gas station. Officer Smith testified that the two men walked in a "suspicious manner." When the men reached the restroom,

1. Act of 1972, April 14, P.L. 233, No. 64, 35 P.S. § 780–113(a)(16).

they both entered it. Shortly thereafter, Officer Jury and Assistant Chief Mohney of the Clearfield Borough Police arrived at the gas station. Officer Smith related the recent occurrences to Officer Jury. It will be necessary to consider later just what Officer Smith told Officer Jury, but for the moment it is enough to say that he explained that the suspicious manner with which the two men had entered the restroom caused him to believe that they were possibly "up to something." Officer Smith's partner, Officer Collins, knew the two men by name and told Officer Jury who they were. Officer Jury recognized appellant's name, as he had once arrested appellant on a marihuana charge. Officer Jury climbed onto the roof of a shed located beside the restroom in order to look into a window located directly above the door of the restroom. From this vantage point, Officer Jury was able to observe Garrell hold a syringe up to the light and push the plunger of the syringe in a slow manner, causing fluid to spurt from the end of the needle. As Officer Smith attempted to climb onto the shed, he made some noise. Hearing this noise, appellant and Garrell started to leave the restroom. As they began to open the door, officers standing outside confronted them. Officer Jury, still on top of the shed, observed appellant throw a syringe into the corner of the restroom and Garrell put his syringe into his right rear pocket. Both appellant and Garrell were apprehended by the officers standing outside the restroom. Officer Jury alighted from the shed and retrieved the syringe that appellant had discarded; he also removed the syringe from Garrell's pocket. Appellant and Garrell were then taken to the Clearfield Borough Police Station. After identifying information was obtained from them, they were released. Analysis showed the substance contained in the syringes to be morphine, which is classified as a Schedule II drug under the Drug, Device and Cosmetic Act.[2]

Appellant filed a motion to suppress evidence. In support of the motion, appellant argued that he was the subject of an unreasonable search when Officer Jury observed his

2. Act of 1972, April 14, P.L. 233, No. 64, 35 P.S. § 780–104(2).

activity through the restroom window. Following a hearing, the motion was denied by the lower court and the case proceeded to trial. After being found guilty, appellant reiterated in post-verdict motions, and now argues on appeal, that his Fourth Amendment rights were violated. We agree.[3]

Whether the Fourth Amendment applies at all to this case depends on whether appellant had a justifiable expectation of privacy when he entered the gas station restroom. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). We hold that he had. The facts of this case are in no persuasive respect distinguishable from those in *Commonwealth v. Soychak*, 221 Pa.Super. 458, 289 A.2d 119 (1972).

Whether appellant's expectation of privacy was unreasonably violated depends on whether Officer Jury had probable cause to invade that privacy by climbing onto the shed and peering into the restroom. We hold that he did not.

In the first place, Officer Jury's testimony regarding what he was told by Officer Smith is too incomprehensible to support a finding of probable cause.

Q. You explain it to us as best you can, okay, the suspicious manner?

A. The two individuals walking close together, in other words not at a normal pace as if two people were walking side by side, but rather front to front, and they had, like, their arms together sort of elbows pinned to the side, and proceeded in the restroom in that manner.

Q. So, now, you say they're walking—he told you they're walking face to face rather than side by side?

A. Well, somewhat face to face. They weren't walking sideways as they go in the restroom.

Q. Like, their arms at their side?

---

3. Because we reverse on this ground we shall not discuss appellant's claim that the lower court erred in allowing the Commonwealth to introduce testimony concerning his prior criminal record.

A. As if to conceal something close to their body, right. Suppression Hearing, N.T. 14–15.

█ In the second place, even if this testimony were comprehensible it could not support a finding of probable cause, for whatever the officer was told, he was not told it until *after* he had peered into the restroom:

THE COURT: Is that what he told you on the night of November the 12th, 1974?

THE WITNESS: That night, he told me they went in in that suspicious manner. And I asked him briefly what the suspicious—what does he mean suspicious manner. He said it looked like they tried to hide something. But he didn't demonstrate to me that night, in other words, go into complete detail like he did at the hearing.

MR. NADDEO:

Q. Okay, if I understand your testimony, Officer, he didn't actually demonstrate as you have demonstrated to me and to the Court; he just said it was in a suspicious manner as though they were trying to hide something; is that basically—

A. Yes, sir.

Q. Is that right?

A. Yes, sir. To the best of my knowledge what I remembered he told me that night, yes.

Q. Now, on the basis of that, and your prior knowledge of the individuals, is that what you're contending?

A. Yes, sir.

Q. You knew that they had been involved with drugs before?

A. Yes, sir.

Q. By reputation?

A. No, sir. I've made arrests on Mr. Demchak.

Q. For what type of drug?

A. Possession of marijuana.

Q. Okay, on that basis you felt that you were justified in climbing up on the ice chest and looking into the window; is that correct?

A. Yes, I did.

Q. And you did do that?

A. Yes, I did.

Suppression Hearing, N.T. 15–16.

Thus, all the officer knew was (1) that another officer had told him that two men had walked into the restroom "in a suspicious manner", and (2) that he had arrested one of the men for possession of marihuana. This did not give the officer probable cause to invade the men's privacy. *See Commonwealth v. Davis*, 225 Pa.Super. 242, 310 A.2d 334 (1973), where we held that probable cause for a search for narcotics was not furnished by a combination of factors that included suspicious behavior and a recent arrest on a narcotics charge.[4]

The evidence seized in the search here discussed should have been suppressed. The judgment of sentence is therefore vacated, and the case remanded for a new trial.

VAN der VOORT, J., files a dissenting opinion in which CERCONE, J., joins.

VAN der VOORT, Judge, dissenting:

While I substantially agree with the statement of facts as set forth by the Majority, I find that I must reach a different conclusion.

Appellant initially contends that his Fourth Amendment rights were violated as a result of an unreasonable search and seizure. It is well settled that the reasonableness of any search and seizure must be determined from the facts and

4. Our conclusion in *Davis* that a recent arrest did not, either alone or in combination with other factors, furnish probable cause is not undermined by *Commonwealth v. Gullett*, 459 Pa. 431, 329 A.2d 513 (1974). The rule announced in *Gullett* was narrow: "[W]here the past criminal conduct bears a sufficient similarity either because of the nature of the crime or the manner of its execution to the act in question, so as to give rise to a reasonable inference that the same person committed both acts, this fact can be considered along with the other available information in a determination of probable cause." *Id.* 459 Pa. at 441, 329 A.2d at 518. This rule has no application to the present case, where appellant's prior arrest and "suspicious" conduct had no demonstrable relation one to the other.

circumstances of each particular case. *Commonwealth v. Anderson*, 208 Pa.Super. 323, 222 A.2d 495 (1966). It therefore becomes necessary to consider the facts of the instant case in light of the two essential elements inherent in any Fourth Amendment issue. First, was the appellant in a place and conducting himself in a manner that falls under the protection of the Fourth Amendment. Secondly, if appellant was in a protected area, was the search unreasonable. In other words, did the officer have probable cause to conduct the search. The purpose of the Fourth Amendment is to protect people, not places. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Therefore, examination must focus on whether or not the police officer's observation of the appellant in this case violated his justifiable expectation of privacy. The Supreme Court in *Katz* held that a nontrespassing surveillance can be unreasonable and therefore unconstitutional. This Court has intimated in the case of *Commonwealth v. Hernley*, 216 Pa.Super. 177, 263 A.2d 904 (1970) that the absence or presence of an actual trespass is only a factor to consider in determining the reasonableness of a visual intrusion. See also *Commonwealth v. Soychak*, 221 Pa.Super. 458, 289 A.2d 119 (1972). There is little doubt that in the present case appellant had a justifiable expectation of privacy when he entered the restroom at the gas station. This position is conceded by the Commonwealth. However, simply because an individual is justified in his belief that he will not be disturbed or observed, it does not necessarily follow that the individual is protected from any and all intrusions. The Constitution guarantees the right to be free from unreasonable searches and seizures. Therefore, before any search can be deemed reasonable there must be probable cause to believe that a crime has been committed or is about to be committed. Probable cause is at best an illusive term to define and only by a close examination of the facts of each case can it be determined whether or not probable cause existed.

The facts in the present case indicated that Officer Jury was informed by Officer Smith that the two individuals

upon leaving the car walked in a very suspicious manner towards the restroom. The uncontradicted testimony of Officer Smith was that the two walked sideways facing each other with their arms extended between themselves and in a hurried manner. It is quite apparent that this type of behavior is not that usually displayed by two men entering a public restroom. A person would not have to be experienced in the field of law enforcement to be justifiably suspicious of the two individuals. In addition to the manner with which they entered the restroom, Officer Jury's suspicions were raised when he was informed of the identity of the two. He had personal knowledge of the appellant, stemming from a prior arrest for violating the Drug, Device and Cosmetic Act, and he knew of Mr. Garrell's involvement with illegal drugs from various informants. Finally, Officer Jury testified that he was familiar with the restroom that the two individuals entered. The room contained one sink and one toilet facility, and was large enough to accommodate only one person. I am not prepared to say that any one of these considerations, taken by itself, is sufficient to establish probable cause. However, probable cause need not be established by only one element. Whether or not probable cause exists, so as to vitiate the unreasonableness of a search, is a question that can only be answered by examining all of the factors within the knowledge of the officer at the time he made the search. With respect to prior criminal activity, the Pennsylvania Supreme Court has held that, "[w]hile, clearly his past criminal history alone would not justify a finding of probable cause regardless how similar the circumstances, it clearly can be considered as one of the factors leading to that determination." *Commonwealth v. Gullett*, 459 Pa. 431, 441, 329 A.2d 513, 518 (1974). Similarly, when two men enter a restroom which can accommodate only one individual, the courts have intimated that this might be sufficient in and of itself to establish probable cause that something criminal in nature is about to take place. "[W]hen two individuals enter the stall, neither of whom appears to be an invalid or handicapped as to require assistance, the immediate surveillance of the stall, without delay incident to a

warrant appears to pass constitutional muster." *Kroehler v. Scott*, 391 F.Supp. 1114, 1119 (E.D.Pa.1975).

In conclusion, I find after reviewing all the information available to Officer Jury at the time he was confronted with deciding whether or not to view the appellant through the window that he did act on the basis of probable cause and therefore the search was not unreasonable.

Appellant also contends that testimony offered during the trial which concerned his prior arrest for a drug violation had no probative value and that its admission constituted reversible error. It is true that a defendant cannot be convicted of one crime by the use of evidence of another crime. *Commonwealth v. McGonigle*, 228 Pa.Super. 345, 323 A.2d 733 (1974). "It is a fundamental precept of the common law that the prosecution may not introduce evidence of the defendant's prior criminal conduct as substantive evidence of his guilt of the present charge." *Commonwealth v. Allen*, 448 Pa. 177, 181, 292 A.2d 373, 375 (1972). However, in the present case the testimony regarding the appellant's prior criminal activity was not offered by the prosecution with the intent of proving that the appellant was guilty of the crime he was standing trial for, but was presented by the officer for the purpose of establishing that he was justified in believing that criminal activity was taking place, or about to take place, in the restroom. The proscription of introducing evidence of an accused's prior crimes is not absolute. There has been a long line of cases decided in this Commonwealth that hold evidence of other crimes is admissible when it tends to prove the defendant's motive, intent, the absence of mistake or accident, the identity of the accused, or a common scheme, plan or design of two or more crimes which are so related that proof of one tends to prove the other. See *Commonwealth v. Showalter*, 231 Pa.Super. 278, 332 A.2d 456 (1974); *Commonwealth v. Peterson*, 453 Pa. 187, 307 A.2d 264 (1973). In *Commonwealth v. Williams*, 307 Pa. 134, 160 A. 602 (1932), the Pennsylvania Supreme Court held that commission of another crime is admissible if it "became part of the history of the event on trial, or was

part of the natural development of the facts . . ." 307 Pa. 134 at 148, 160 A. 602 at 607. Since the testimony of the officer regarding his knowledge of the appellant's prior criminal activity was not offered as substantive proof of the crime for which the appellant was being tried, I would hold that it was properly admitted and affirm the judgment of sentence.

CERCONE, J., joins in this dissenting opinion.