593 A.2d 895

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Nathaniel DANIELS.**

Superior Court of Pennsylvania.

Argued May 7, 1991.

Filed July 1, 1991.

Petition for Allowance of Appeal Denied
Nov. 15, 1991.

Hugh H. Burns, Jr., Asst. Dist. Atty., Philadelphia, for Com., appellant.

Fortunato N. Perri, Jr., Philadelphia, for appellee.

Before ROWLEY, President Judge, and CIRILLO and JOHNSON, JJ.

ROWLEY, President Judge.

The Commonwealth of Pennsylvania, appealing from the order of the trial court granting appellee's motion to suppress, raises the following issue: whether the trial court erred in suppressing two handguns seized while in plain view by police officers lawfully present in appellee's home. After reviewing the record, we reverse the order of the trial court granting appellee's motion to suppress the handguns.

The following factual history was set forth by the trial court in its opinion:

> On November 26, 1987, at 8:30 p.m. Michelle Wharton told police Officer Marone that earlier that evening she had been raped at gunpoint by her ex-boyfriend, [appellee] Nathaniel Daniels, at his residence at 1519 Opal Street. Officer Marone and two other police officers took the complainant to 1519 Opal Street. The defendant answered the door and stepped outside. He was immediately handcuffed and escorted to the partol [sic] car where he was identified by the complaining witness. The defendant asked permission to get his keys and lock his door before being taken to the police station. He was told that he could do so only if accompanied inside by the officers. Several Officers followed the defendant to a second floor bedroom where Officer Kapusta seized a gun located on a dresser. Before escorting the defendant out of the house[,] Officer Kapusta went into the dining room and took a second gun from the table.[1]

---

1. Officer Kapusta testified that, as he was walking down the steps from the second floor, he looked over the railing and could see into the dining room where the gun was located. Suppression Hearing Transcript 7/10/89 at 44.

Trial Court Opinion at 2–3 (footnote added) (citations to record omitted).[2]

■ The trial court determined that appellee merely "acquiesced to the police entry in order to obtain his keys rather than leaving his house unlocked [and] there was no consent for any search or for any seizure."[3] *Id.* at 4. Therefore, the trial court concluded that the police officers had no right to search appellee's house and seize anything contained in it without a search warrant. The Commonwealth, on the other hand, argues that, pursuant to the plain view exception to the Fourth Amendment warrant requirement, the guns could constitutionally be seized by the police officers because they were in appellee's residence with his consent. After examining the applicable caselaw,

**2.** Although the trial court granted appellee's motion to suppress the guns, the trial court did not credit appellee's version of the events leading to the discovery of these guns. Contrary to the finding made by the trial court that the police officers escorted appellee into his home so he could get his keys and lock his house, appellee testified that, after he was outside and handcuffed, the police officers asked him if they could go inside and talk to him and that, once they were inside, they "shot straight upstairs" and he heard drawers slamming and "a lot of rumbling around on the dresser." Suppression Hearing Transcript 7/10/89 at 62–67. Appellee, however, does not contend that the guns were located in the drawers which the police officers were allegedly searching. It is undisputed that one of the guns was on top of a speaker in appellee's bedroom and the other gun was on the dining room table. *See id.* at 25–26, 64, 67.

**3.** The Commonwealth contends that after the suppression hearing the trial court made formal findings of fact on the record in which it characterizes the police entry as lawful and with appellee's permission. Although the Commonwealth argues that the findings made by the trial court in its opinion, to the extent they conflict with the earlier findings, should be disregarded, the portion of the suppression hearing transcript which contains the trial court's factual findings was not included in the certified record. We will not consider information contained only in a party's brief. *Commonwealth v. Rini*, 285 Pa.Super. 475, 427 A.2d 1385 (1981). Nonetheless, the trial court's conclusion that appellee "acquiesced" rather than "consented" is not a factual finding by which we are bound, but is a legal conclusion drawn from the findings of fact. *Commonwealth v. Davidson*, 389 Pa.Super. 166, 566 A.2d 897 (1989), *allocatur denied*, 525 Pa. 624, 578 A.2d 412 (1990). We may properly review the validity of inferences and legal conclusions drawn from the suppression court's findings of fact. *Id.*

we agree with the Commonwealth that the guns were constitutionally seized.

In considering the plain view doctrine, the Pennsylvania courts have determined that, in order for the doctrine to apply, the following requirements must be satisfied: (1) the initial intrusion must be lawful; (2) the item must have been inadvertently observed; and (3) there must be probable cause to link the observed property with criminal activity. *Commonwealth v. Pine*, 370 Pa.Super. 410, 536 A.2d 811 (1988), *allocatur denied*, 519 Pa. 653, 546 A.2d 57 (1988); *Commonwealth v. Kendrick*, 340 Pa.Super. 563, 490 A.2d 923 (1985). The United States Supreme Court has recently discussed these requirements in *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990):

> It is, of course, an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. There are, moreover, two additional conditions that must be satisfied to justify the warrantless seizure. First, not only must the item be in plain view, its incriminating character must also be 'immediately apparent.' ... Second, not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must also have a lawful right of access to the object itself.[4]

4. The fact that the police officers were already in appellee's home when they observed the guns distinguishes the present case from those cases in which plain view alone does not justify a warrantless seizure. Those cases involve situations where the observation of the evidence takes place before any intrusion into a constitutionally protected area. *See Commonwealth v. Weik*, 360 Pa.Super. 560, 521 A.2d 44 (1987). In such cases, the police officers, after lawfully observing an item in plain view, may not enter and make a warrantless seizure absent exigent circumstances. *Id.* "This rule is contrary to the rule in the after-intrusion line of cases. In those cases because the justifiable intrusion has occurred, no further intrusion is occasioned by the seizure of evidence which is in plain view and the seizure is permitted without more...." *Id.*, 360 Pa.Superior Ct. at 565, 521 A.2d at 46 (emphasis omitted) (*quoting Commonwealth v. Adams*, 234 Pa.Super. 475, 482, 341 A.2d 206, 210 (1975) (citations omitted)). The present

*Id.* at ——, 110 S.Ct. at 2308, 110 L.Ed.2d at 123 (footnote added) (citations omitted) (footnote omitted). In *Horton,* the court eliminated the requirement that the observation of the item must be inadvertent.

In the present case, the trial court based its decision to grant appellee's motion to suppress on the determination that the initial intrusion was not lawful. The trial court stated that appellant did not consent to the police officer's entry into his home, but only submitted to lawful authority after "[t]he police made it very clear that the defendant, under arrest outside of his home, would be permitted to secure his premises only if accompanied by the police officers." Trial Court Opinion at 4. Similarly, appellee contends that, after he was placed under arrest and handcuffed, he was "presented with a Hobson's choice: either 'consent' to the officer's entry or, without his keys, leave his home unsecured. Clearly, [he] had no choice whatsoever and his consent can, in no way imaginable, be deemed voluntary." Appellee's Brief at 7. We do not agree.

After appellee was handcuffed, he asked police officers if he could get his keys so that he could lock his house. He argues that he merely stood silent after this request and that the police officers unilaterally decided to enter his home. Clearly, the police officers' entry into appellee's home was in response to appellee's request that he be allowed to enter his home to get his keys. Given the circumstances, he could not have reasonably believed that he would be permitted to enter his home alone. Obviously, he could do so only if accompanied by the police officers. He was under arrest after being identified by the victim as the man who had raped her at gunpoint in his home. It would have been completely irresponsible for the police officers to permit appellee to enter his home alone.

Even if appellee initially had this belief, unreasonable as it would have been, he could have decided to leave his house unlocked after he realized the police officers were going to

case is an after-intrusion case in which seizure of the evidence is permitted as long as the abovementioned requirements are met.

118

accompany him into the house. Appellee did not merely acquiesce to the police officers' entry; it was appellee's own choice to go into his home which required the police officers to accompany him. *Cf. Davidson, supra* (When the defendant requested that the police officer return her purse to her, the police officer conducted a lawful protective search of the purse first; the drugs found therein were in plain view and therefore admissible.). The fact that appellee was faced with a difficult. choice, that is, leave his home unlocked or allow the police officers to enter his home, does not make the police officers entry any less lawful.

Appellee also argues that he believed that he was consenting to the police officers accompanying him into the house so that he could get his keys, but that he did not understand that his agreement to their entry was also an agreement to a waiver of his right to be free from unwarranted searches. This assertion reflects a misunderstanding of the plain view doctrine.

> 'In general, where practical, the police are required to obtain a search warrant. Warrantless searches are *per se* unreasonable, subject only to a few, limited exceptions.' When police officers who are 'justifiably at the scene [see] contraband in plain view,' however, the observation 'is not a search within the meaning of the Fourth Amendment.... [and] no warrant is required.'

*Weik, supra* 360 Pa.Super. at 563, 521 A.2d at 45 (citations omitted). The fact that appellee did not consent to a search is irrelevant because no search was conducted.

 Because we have concluded that the police officers were lawfully in appellee's house, we must determine whether the observation of the guns was inadvertent.[5] The plain view exception cannot be used as a pretext when police officers know in advance the location of an item and intend to seize it. *Kendrick, supra,* 340 Pa.Super. at 569, 490 A.2d at 926 (*citing Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). In *Ken-*

**5.** Although this requirement has been eliminated by the United States Supreme Court in *Horton, supra,* we will still address it.

*drick,* the court noted that although the police officers were aware of the possibility that a drug sale might be in progress when they lawfully entered the defendant's home, there was nothing to indicate that they had anything more than a general expectation. Similarly, in the present case, the police officers were aware that the victim had been raped at gunpoint. However, they did not enter the house knowing the location of the guns and intending to seize them. We therefore conclude that the observation of the guns was inadvertent.

■ Finally, we must consider whether the police officers had probable cause to believe that the guns were evidence of criminal activity. The probable cause standard

merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief,' that certain items may be contraband or stolen property or *useful as evidence of a crime;* it does not demand any showing that such a belief be correct or more likely true than false. A 'practical, non-technical probability that incriminating evidence is involved is all that is required.'

*Kendrick, supra,* 340 Pa.Super. at 571, 490 A.2d at 927 (emphasis added) (*quoting Texas v. Brown,* 460 U.S. 730, 741–43, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502, 513–14 (1983). In *Kendrick,* a panel of this court found that there was probable cause for the police officers to associate a film vial with criminal activity. In *Commonwealth v. Doria,* 393 Pa.Super. 363, 574 A.2d 653 (1990) (*en banc*), during a search of the defendant's apartment, conducted pursuant to a valid search warrant, a police officer found a leather jacket in a closet with other male clothing. Although the leather jacket was not one of the items listed on the search warrant, the police officer knew that the defendant was a suspect in burglaries other than the one which was being investigated at that time. The police officer therefore took the jacket from the closet and then telephoned one of the victims of the other burglaries to confirm the likelihood that the jacket was one of the items stolen. The court stated that the police officers were not required to dismiss the knowledge of the additional burglaries from their minds

while conducting a search for evidence of other crimes. Therefore, the court concluded that seizing the jacket was proper. *See also Commonwealth v. Millard,* 273 Pa.Super. 523, 417 A.2d 1171 (1979) (Police officers, while searching the defendant's apartment for a key chain, ring, and frozen meats, properly seized a wrench and a bolt.).

In the present case, the victim informed the police officers that appellee had raped her in his home at gunpoint. While escorting appellee through his home, the police officer observed the two guns. Although the record does not reveal whether the police officer knew a handgun was involved, it would be a reasonable inference for the police officer to make under the circumstances. We conclude that the police officer had probable cause to believe the guns observed in appellee's home were evidence of a crime.

Because the police officer was lawfully in appellee's home, and because he inadvertently observed the guns and had probable cause to believe the guns were linked with criminal activity, we conclude that the plain view exception to the warrant requirement applies. Accordingly, the trial court erred in granting appellee's motion to suppress.

The order of the trial court granting appellee's motion to suppress is reversed. The case is remanded for further proceedings. Jurisdiction is relinquished.