619 A.2d 735

**COMMONWEALTH of Pennsylvania**

v.

**Nathanial PARKER, Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 27, 1992.

Filed Jan. 4, 1993.

---

Samuel C. Stretton, West Chester, for appellant.

Stuart Suss, Asst. Dist. Attorney, West Chester, for Com., appellee.

Before BECK, JOHNSON and HOFFMAN, JJ.

JOHNSON, Judge:

In this case, we are asked to determine whether the trial court erred in failing to suppress a tape seized by police from the automobile of Nathanial Parker. We conclude that the search and seizure violated Parker's rights under Article 1, Section 8 of the Pennsylvania Constitution as well as under the Fourth Amendment of the United States Constitution. We, therefore, reverse the judgment of sentence and remand for a new trial at which the Commonwealth will not be permitted to introduce the illegally seized evidence.

In the present case, Officer Milligan and his partner stopped Parker as he drove his car out of a gas station, across a street, and into a parking lot. Milligan suspected that Parker did not have a valid driver's license. N.T., April 30, 1991, at 13. Milligan testified that, after stopping Parker and verifying that Parker was operating his vehicle without a license, he asked Parker if he could search the vehicle for "drugs or other contraband" (N.T., April 30, 1991, at 15) or for "drugs and other violations of law" (N.T., April 30, 1991, at 32). Milligan's reason for requesting a search was that he had assisted in arresting Parker for a drug offense at some time in the past. N.T., April 30, 1991, at 22–23. While Milligan testified that Parker consented to having his vehicle searched, no consent form was executed prior to the search of the automobile. Shortly after Parker was stopped by Milligan, State Trooper Kern and another state trooper arrived at the scene. There were a total of four armed police officers at the scene when Parker allegedly consented to the search of his automobile.

Kern conducted the search of the automobile, which revealed no drugs. During the search, Kern found a cassette tape recorder, containing a tape, under the driver's seat of the car. Kern confiscated the tape, but left the tape recorder in Parker's car. Kern testified that he was unaware that possession of a tape recorder could be considered illegal. N.T., May 1, 1991, at 100.

Parker was charged with violating 18 Pa.C.S. § 5703, Pennsylvania's Wiretapping and Electronic Surveillance Act. A

jury trial was held, following the denial of Parker's motion to suppress, at which Parker was found guilty. Post-trial motions were denied, and Parker was sentenced to a 16 to 30 month term of imprisonment. This timely appeal follows.

Parker alleges that the trial court erred in failing to suppress the tape because his consent to search his vehicle was not voluntarily made. Parker further contends that even if this Court finds his consent to be valid, the police seizure of the tape was beyond the scope of the requested consent, and, beyond the parameters of the plain view doctrine. Additionally, Parker maintains that the playing of the tape was a separate search which, regardless of the legality of the seizure of the tape, required the police to obtain a search warrant prior to playing the tape. Parker also raises issues of error allegedly committed by the court during trial. However, as we find that a new trial is required, based on the trial court's failure to suppress the tape, we need not address the other issues Parker presents on appeal.

In reviewing a trial court's denial of a motion to suppress, we must determine whether the record supports the factual findings of the suppression court, as well as determine the reasonableness of the inferences and legal conclusions drawn therefrom. *Commonwealth v. Lemanski*, 365 Pa.Super. 332, 529 A.2d 1085 (1987). We will consider the evidence of the prosecution and so much of the evidence of the defense as, read in the context of the record as a whole, remains uncontradicted. *Commonwealth v. Kean*, 382 Pa.Super. 587, 556 A.2d 374 (1989) *appeal denied*, 525 Pa. 596, 575 A.2d 563 (1990). It is in light of this standard that we review this case.

The application of the exclusionary rule, which is the subject of this appeal, can be based on either Article 1, Section 8 of the Pennsylvania Constitution or on the Fourth Amendment of the United States Constitution. Both provisions have been interpreted as protecting those zones where one has a reasonable expectation of privacy. *Kean, supra*, 382 Pa.Super. at 595, 556 A.2d at 378. Article 1, Section 8 of the Pennsylvania Constitution provides:

*Section 8.* The people shall be secure in their persons, house, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Although the guarantees of security against unreasonable searches and seizures in the Pennsylvania Constitution pre-date those contained in the United States Constitution, the guarantees under the Fourth Amendment of the United States Constitution are similar. *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887 (1991). The Fourth Amendment to the United States Constitution states:

The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures shall not be violated, and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

 The protections of individual privacy against unreasonable government searches and seizures under Article 1, Section 8 of the Pennsylvania Constitution are more expansive than those afforded under the Fourth Amendment of the United States Constitution. *See e.g. Edmunds, supra; Commonwealth v. Melilli,* 521 Pa. 405, 555 A.2d 1254 (1989); *Commonwealth v. Sell,* 504 Pa. 46, 470 A.2d 457 (1983). The United States Supreme Court's interpretations of Fourth Amendment guarantees do not bind this Court in reaching conclusions regarding the protections provided under Article 1, Section 8 of the Pennsylvania Constitution. *Commonwealth v. Beauford,* 327 Pa.Super. 253, 475 A.2d 783 (1984), *appeal denied,* 508 Pa. 319, 496 A.2d 1143 (1985). However, we conclude that under both state and federal constitutional provisions, the search and seizure in this case was unconstitutional.

 It is uncontested that Milligan had reasonable and articulable grounds for stopping Parker, as he suspected that

Parker was driving while his license was suspended. *See e.g.* *Commonwealth v. Whitmyer,* 415 Pa.Super. 393, 609 A.2d 809 (1992). However, in order to justify detaining Parker for further questioning, Milligan must have been able to point to specific and articulable facts that, taken together with the reasonable inferences from those facts, reasonably indicate that criminal activity might have been afoot. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The stopping of an automobile or even the arrest of the driver of a motor vehicle for an ordinary traffic offense does not, without more, permit a warrantless search of the vehicle. *Commonwealth v. Trunzo,* 404 Pa.Super. 15, 589 A.2d 1147 (1991) *citing Commonwealth v. Dussell,* 439 Pa. 392, 266 A.2d 659 (1970).

Milligan stated that his sole reason for requesting a search of Parker's vehicle was that he knew Parker had been previously arrested for a drug violation. Milligan did not articulate any facts which suggested that Parker had committed any offense at the time of the search, other than operating his vehicle without a license. Without articulable grounds to suspect the presence of drugs or other contraband, Milligan's authority was limited, by both the Pennsylvania and the United States Constitutions, to issuing a citation to Parker. *Commonwealth v. Lopez,* 415 Pa.Super. 252, 609 A.2d 177 (1992). Despite the fact that there were no objective circumstances to support a suspicion that "drugs or other contraband" were hidden in the vehicle, Milligan detained Parker, requesting permission to search his vehicle. Any continued detention of Parker, after Milligan explained and issued the traffic citation, constituted an unreasonable seizure in violation of the Fourth Amendment, tainting all evidence resulting therefrom. *Id.* at 262, 609 A.2d at 182.

The Commonwealth contends *Lopez* does not apply, in the present case, because Parker was unable to drive away from the scene of the police stop due to his suspended license. This argument is specious. In *Lopez,* we held that the police may only detain a driver and request a search if there are reasonable and articulable grounds to suspect criminal activity or

contraband. We did not hold there, and we refuse to hold here, that if the driver may not drive away from the scene, detention and search then become permissible.

In this case, while the initial police stop was proper, the continued detention of Parker was a seizure under the Fourth Amendment. *Commonwealth v. Brown,* 388 Pa.Super. 187, 565 A.2d 177 (1989). Thus, the resulting search was the product of that seizure. The police detention of Parker, after the issuance of a citation for a traffic violation, was improper. Therefore, the products of the improper detention and search should have been suppressed.

However, even if we were to conclude that Parker voluntarily consented to a search of his automobile for "drugs and other contraband" or "drugs and other violations of law", we are unable to conclude, as did the trial court, that a tape recorder or a cassette tape are within the scope of such consent to search. The scope of a search is generally defined by its expressed object. *Florida v. Jimeno,* —— U.S. ——, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991); *Walter v. United States,* 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980). In this case, the expressed object of the search was "drugs and other contraband" or "drugs and other violations of law". The Commonwealth fails to direct us to any authority, and we find none, under which a cassette recorder or tape would, on its face, be considered either contraband or a violation of law, regardless of where the tape recorder or tape was stored in a vehicle.

The Commonwealth offers an alternative theory to validate the search stating that even if the consent to search did not encompass seizure of the cassette, the police were justified in searching beneath the driver's seat while looking for drugs or other contraband. The Commonwealth then argues that since the police could properly search beneath the seat of the car, the tape was properly seized under the plain view doctrine. We disagree.

In order for the plain view doctrine to apply, three requirements must be met: (1) the initial intrusion must be

lawful, (2) observation of the item must be inadvertent, and (3) there must be probable cause to link the observed property or item with criminal activity. *Commonwealth v. Pine,* 370 Pa.Super. 410, 536 A.2d 811 (1988), *appeal denied,* 519 Pa. 653, 546 A.2d 57 (1988); *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). The incriminating character of the evidence must be immediately apparent. *Commonwealth v. Yacoubian,* 339 Pa.Super. 413, 489 A.2d 228 (1985). Here, assuming, *arguendo,* that the first two requirements of the plain view doctrine have been met, we conclude that, without more, there was no probable cause to link the cassette tape to criminal activity.

We are unable to discern any authority for the Commonwealth's proposition that probable cause exists to suspect criminal activity because a tape recorder and tape are located in a curious or unusual location. The Commonwealth declares that merely finding the cassette, located beneath the seat of the car, gave the police probable cause to link the tape with a violation of the Wiretapping and Electronic Surveillance Act.

However, Kern testified at trial that he was not familiar with the provisions of the Wiretapping and Electronic Surveillance Act. N.T., May 1, 1991, at 92. Rather, he stated:

"I thought at that point that the possibility existed that the tape, of course, was being used for criminal activity or whatnot...."

*Id.* Kern was unable to further articulate what type of "criminal activity or whatnot" he suspected the tape could be involved in. On its face, the tape was an ordinary cassette, the possession of which is not, in itself, criminal.

The probable cause standard requires that the facts available to the police officer would warrant a person of reasonable caution in the belief that certain items may be contraband or stolen property or useful as evidence of a crime. *Commonwealth v. Daniels,* 406 Pa.Super. 112, 593 A.2d 895 (1991). While the probable cause standard is flexible, mere suspicion is not a substitute for probable cause as grounds for a search and seizure. *Commonwealth v. Kelly,* 487 Pa. 174, 409 A.2d 21 (1979).

 Under the plain view doctrine, a policeman does not have the right to seize any object in his view in order to examine it and determine if it is or would be evidence in a criminal prosecution. *See Arizona v. Hicks,* 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987). An object may only be seized where it is readily apparent that the object is contraband or evidence of criminal activity. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Yacoubian, supra.*

 Kern's testimony does not indicate probable cause to believe that an ordinary cassette, without other indications of criminal behavior, was evidence of a crime. Kern testified that he had had opportunity to observe tape recorders and tapes being confiscated in connection with arrests for possession of drugs. Thus, Kern assumed, after being informed of an alleged previous drug arrest of Parker at some time in the past, that he would be justified in seizing the cassette in the instant case. Knowledge of a person's criminal background or prior arrest, alone, is insufficient to provide probable cause for seizure of an item which is not otherwise indicative of criminal activity. *See Commonwealth v. Demchak,* 251 Pa.Super. 253, 380 A.2d 473 (1977).

Here, as Kern did not observe Parker engaged in conversation with any persons, and found no drugs, contraband or any illegal items in Parker's automobile, Kern's suspicions regarding the tape do not rise to the level of probable cause. Kern was faced with a person operating an automobile without a license, who happened to have a cassette recorder and cassette under the seat of his car. After a thorough review of the record, we are unable to conclude that Kern had probable cause to associate the tape with any criminal activity. Without probable cause, even an examination of the tape by a police officer becomes improper. *Arizona v. Hicks, supra.*

Lastly, Parker contends that regardless of whether the police properly seized the tape, the playing of the tape was a separate search which required a search warrant. We agree.

A party asserting an exemption from the requirement for a search warrant bears the burden of establishing that his actions come within a recognized exemption. *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979). The Commonwealth relies upon *Commonwealth v. Copenhefer*, 526 Pa. 555, 587 A.2d 1353 (1991), to support its contention that the police properly played the tape without a warrant. In *Copenhefer*, the police seized a computer pursuant to a valid search warrant. There, the police were searching for a kidnapper and knew that ransom notes and instructions to the victim's husband had been written on and printed from a computer. The police, in that case, had probable cause to believe that Copenhefer's computer contained information related to the kidnapping and the police obtained a search warrant which permitted the police access to the computer and its files. Our supreme court held that once the computer had been seized pursuant to a valid search warrant, the police could access its files without obtaining a separate search warrant.

The present case contrasts with *Copenhefer* because the police, here, possessed no search warrant and did not legally seize the tape. The Commonwealth contends that since the police had consent to search, that consent encompassed the playing of the tape. Brief for the Commonwealth at 25. When an official search is properly authorized—whether by consent or by the issuance of a valid search warrant—the scope of the search is limited by the terms of its authorization. *Walter*, 447 U.S. at 656, 100 S.Ct. at 2401, 65 L.Ed.2d at 417. Assuming that consent was given to the police to search for "drugs or other contraband", this consent did not encompass the playing of the tape which could qualify neither as drugs nor contraband.

Parker directs us to our supreme court's holding in *Commonwealth v. Timko*, 491 Pa. 32, 417 A.2d 620 (1980), to support his assertion that a separate search warrant was required before the police could listen to the tape. In that case, the police lawfully arrested Timko. The police then performed an automobile search incident to arrest. During

their search, the police removed a zippered valise from Timko's car and searched it. Timko challenged the search of his valise claiming that in order for the police to open his valise and search it, a separate search warrant was required. Our supreme court agreed and held that once the valise was reduced to the custody of the police, there was neither danger to police officers nor an exigent circumstance which could justify the immediate search of the closed container. *Id.* at 39, 417 A.2d at 623. There, the court stated that the valise could not be searched without a warrant simply because it had been seized from an automobile. *Id.*

The rationale in *Timko* is persuasive. There, the valise was lawfully seized pursuant to arrest. However, without a search warrant, the police were prohibited from searching within the valise where the appellant had a reasonable expectation of privacy. *Timko,* at 38, 417 A.2d at 623. The Commonwealth, here, claims that the tape was validly seized, either pursuant to the plain view doctrine or Parker's consent. However, even if the seizure of tape were valid, if *Timko* is applied, accessing the contents of the tape in which Parker had a reasonable expectation of privacy, required a separate search warrant.

The United States Supreme Court, in a plurality decision, addressed an issue similar to the one presented in this case in *Walter v. United States, supra.* In that case, twelve sealed packages addressed to a nonexistent corporation, "Leggs, Inc.", were inadvertently delivered to "L'Eggs Products, Inc.", a legitimate business enterprise. The packages were opened by L'Eggs employees and were discovered to contain boxes of film. On each box was a graphic description of the homosexual acts depicted in each enclosed film. The boxes were turned over to FBI agents, who took possession of the films and screened them without attempting to obtain a warrant. In that case, the Government argued that since it had lawful possession of the packages, the films were in plain view, and the labels gave the FBI agents probable cause to believe that the packages contained obscene materials, the warrantless screening of the films was constitutionally permissible. The Supreme Court held it was not. While the Court agreed that

the Government was in lawful possession of the films, it held that screening the films was a separate search, impermissible without a warrant. *Walter*, 447 U.S. at 657, 100 S.Ct. at 2402, 65 L.Ed.2d at 418. The Court also stated that even if the films were in plain view due to the private search by the L'Eggs employees, screening of the films to determine their evidentiary value far exceeded the authority extended to Government officials under the plain view doctrine. *Walter* at 657, 100 S.Ct. at 2402, 65 L.Ed.2d at 418.

The reasoning in *Walter* applies in the present case. Here, the Commonwealth contends that because the police had lawful possession of the tape due to Parker's consent or through the plain view doctrine, no warrant was required in order for the police to listen to the contents of the tape. Under *Walter*, listening to the tape was a separate search beyond the scope of the alleged consent given, and beyond the limited authority afforded the police under the plain view doctrine. *Walter* at 657, 100 S.Ct. at 2402, 65 L.Ed.2d at 418. Here as in *Walter*, the police had possession of the tape and there were no exigent circumstances. If there were probable cause that the contents of the tape were evidence of crime, a warrant could have been obtained, with no danger that valuable evidence would be lost.

We also find the reasoning in a Fifth Circuit case, *United States v. Turk*, 526 F.2d 654 (5th Cir.1976), to be instructive and persuasive. In *Turk*, an individual was arrested, and drugs and weapons were seized from his vehicle. The police also seized a tape recorder and some tapes from the vehicle. The police then proceeded to listen to the tapes and used the recorded conversations contained thereon to implicate Turk in criminal activity. The court, adopting the rationale of the district court, stated:

[I]f the question were could the contents of the tape be used against Mr. Kabbaby, I would rule that it could not, that the playing of the tape was an illegal search by virtue of the playing, not by virtue of taking the tapes into custody or retaining them, but by playing them.

*Id.* at 666. The *Turk* court held that while the tapes were properly seized incident to arrest, the police officers were required to obtain a search warrant prior to listening to the tapes. *Id.* at 666. In *Turk,* however, the tapes were not suppressed but were used in a grand jury proceeding, where under *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), the Fourth Amendment exclusionary rule cannot be invoked by a witness. *Id.*

Relying on this reasoning, we hold that, regardless of whether the tape was seized pursuant to a valid exception to the general warrant requirements, prior to listening to the tape, the police should have obtained a warrant. If the police had probable cause to listen to the tape, a warrant could have easily been obtained.

We conclude that because the police search and seizure violated Parker's rights under both Article 1, Section 8, of the Pennsylvania Constitution and under the Fourth Amendment of the United States Constitution, we must reverse the judgment of sentence in this case, and remand for a new trial, at which the illegally seized evidence will not be introduced.

Judgment of sentence reversed. Case remanded with instructions. Jurisdiction relinquished.

HOFFMAN, J., files a concurring opinion.

HOFFMAN, Judge, concurring:

Although I concur in the result reached by the majority, I write separately because I respectfully disagree with the rationale of the opinion.

The majority states that it is uncontested that Officer Milligan had reasonable and articulable grounds for stopping Parker. The majority holds, however, that subsequent to Officer Milligan's issuance of a citation to Parker for driving with a suspended license, Milligan was precluded by both the Pennsylvania and United States Constitutions from asking any further questions. I disagree.

First, the majority holds that Officer Milligan's request to search Parker's car constituted a detention in violation of

Parker's Fourth Amendment rights. In support of its contention, that absent reasonable suspicion of criminal activity, Officer Milligan's authority was limited to the issuance of a citation, the majority cites *Commonwealth v. Lopez*, 415 Pa.Super. 252, 609 A.2d 177 (1992). *Lopez*, however, does not support the broad proposition that a police request to search constitutes a detention triggering Fourth Amendment protection.

In *Lopez*, this court addressed the constitutionality of each increment of the police confrontation separately. Similar to the instant case, the initial stop of Lopez for a traffic violation was found permissible. Thereafter, however, the court found that the officer's retention of Lopez's driver's license and automobile rental agreement, while the officer asked Lopez a series of questions, constituted an impermissible detention because the officer had no reasonable grounds to suspect an illegal transaction in drugs or other serious crime. *Id.*, 609 A.2d at 182. The court found that Lopez's consent was vitiated by the illegal detention. "Because we conclude that the detention of Lopez was illegal, Lopez's consent to the search of the Volkswagen was tainted by the illegality and was ineffective to justify the search." *Id.* This court did not find, however, that the officer's request to search Lopez's car in and of itself constituted a detention. The illegal detention resulted from the officer's retention of Lopez's license and rental agreement. Hence, I respectfully disagree that Officer Milligan's request to search Parker's vehicle constituted a detention triggering Parker's Fourth Amendment rights.

Subsequent to Officer Milligan's issuance of the citation, neither the presiding officers' conduct or verbal statements could be denoted as a restraint of Parker's liberty. Parker has failed to introduce any evidence indicating that a reasonable person under the same circumstances would have believed that he was not free to leave after the issuance of the citation. "Not all intercourse between policemen and citizens involves seizures of persons. [Citation omitted]. Only when the officer, by physical force or a show of authority, has in some way restrained the liberty of an individual may we

conclude that a seizure has occurred." *Commonwealth v. Lidge,* 399 Pa.Super. 360, 366, 582 A.2d 383, 386 (1990) *alloc. denied,* 527 Pa. 598, 589 A.2d 689 (1991). I decline to hold that a request to search, without more, constitutes an investigative detention.

The majority further holds that the existence of a microcassette tape recorder four and a half to five inches in size affixed beneath the driver's seat of appellant's vehicle failed to provide the police with probable cause for the tape's seizure pursuant to the plain view doctrine. Once again, I respectfully disagree.

Probable cause does not deal in certainties; rather, a court is faced with the factual and practical considerations of everyday life which affect how reasonable and prudent men act. *Commonwealth v. Trenge,* 305 Pa.Super. 386, 395, 451 A.2d 701, 705 (1982); *Commonwealth v. Tolbert,* 235 Pa.Super. 227, 230, 341 A.2d 198, 200 (1975). Pennsylvania's Wiretapping and Electronic Surveillance Act prohibits the willful interception of oral communication. 18 Pa.C.S.A. § 5703(1). Contrary to the majority's holding, it is difficult to discern what purpose other than the surreptitious recording of another's oral communication could be served by appellant's placement of a microcassette tape recorder beneath the seat of his car. Although mere suspicion is not a substitute for probable cause as grounds for a search and seizure, I am of the opinion that probable cause justified Officer Kern's seizure of the tape.

Nevertheless, I agree with the majority's holding that regardless of whether probable cause existed for the seizure of the tape, a search warrant was required subsequent to the tape's seizure before the tape could properly be played.

The fourth amendment protects two types of expectations, one involving "searches," and the other "seizures." *United States v. Jacobsen,* 466 U.S. 109, 114, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984). A "search" occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. *Id.* I find that private tape recordings are within the same class of objects as letters in which the public at large has a justifiable expectation of privacy. *See United States v.*

410

*Van Leeuwen,* 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970). Hence, although the police may have justifiably seized the tape pursuant to the plain view doctrine, they nonetheless were required to obtain a search warrant prior to the playing of the tape. Thus, I concur in the result reached by the majority.