672 A.2d 826

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**David P. WRIGHT, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 11, 1995.

Filed Feb. 26, 1996.

622

624

Joseph K. Cottrell, Williamsport, for appellant.

Robert W. Ferrell, Assistant District Attorney, Williamsport, for Commonwealth, appellee.

Before DEL SOLE, POPOVICH and OLSZEWSKI, JJ.

POPOVICH, Judge:

This is an appeal from the judgement of sentence entered in the Court of Common Pleas of Lycoming County, following appellant's conviction on charges of possession of a controlled substance [1] and possession of drug paraphernalia.[2] Appellant raises one issue for our review, whether the lower court erred in failing to suppress heroin found in his possession after he was searched by Lycoming County police officers at the Susquehanna Railways Bus Station in Williamsport, Pennsylvania. For the reasons set forth below, we reverse.

> In reviewing the denial of a motion to suppress, our responsibility is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. If the suppression court held for the prosecution, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the factual findings of the suppression court are supported by the evidence, the appellate court may reverse if there is an error in the legal conclusions drawn from those factual findings.

*Commonwealth v. Lopez*, 415 Pa.Super. 252, 609 A.2d 177, 178–179 (1992), *alloc. denied*, 533 Pa. 598, 617 A.2d 1273 (1992) (citations omitted).

1. Title 35 § 780–113(A)(16).
2. Title 35 § 780–113(A)(32).

The only testimony at the suppression hearing was elicited by the prosecution's witnesses. After a careful review of the record, we are satisfied that the suppression court's factual findings, as they appear in its Opinion of August 25, 1995, are supported by the record. However, we are compelled to note several important omissions from the suppression court's summary of the salient facts.

Since 1990, Detective Paret, who was stationed in Allentown, Pennsylvania, was involved with the drug interdiction program. The program targeted those individuals who used the public transportation system as a means of transporting illegal narcotics. The detective worked closely with bus drivers from Susquehanna Trailways. In the past, he has arrested individuals who were using Susquehanna Trailways to transport narcotics from Philadelphia, Pennsylvania to Williamsport, Pennsylvania. Through his investigations, the detective discovered that many individuals were taking indirect routes to Williamsport. Namely, they would travel from Philadelphia to Wilkes–Barre, Pennsylvania and then to Williamsport.

On November 3, 1994, Detective Paret received a page from a Greyhound Bus driver. When he returned the driver's page, the detective learned that the bus had already departed Philadelphia and was headed for Wilkes–Barre. A ticket agent informed the detective that the driver had indicated to her that two people were enroute from Philadelphia to Williamsport and that the detective should "check them out."

At this point, Detective Paret telephoned Detective Byerly, a Lycoming County Detective, and relayed the message. He told Detective Byerly that he had no description of the individuals, but that he felt that some of Detective Byerly's men should go to the bus station for a "mere encounter," i.e., the officers should talk to the passengers as they disembarked from the bus and check for the possibility of narcotics trafficking.

Later in the day, Detective Paret contacted the Greyhound Bus driver in Wilkes–Barre, and a description of the individu-

als was provided to him. The driver indicated that two black males ticketed under the name Wright were travelling from Philadelphia to Williamsport making a connection in Wilkes–Barre. The driver described the males as being approximately 5' 10" in height and of medium build. The driver further indicated that the males made their ticket purchases "at the last minute" and that he felt that they were acting in a suspicious manner. This information was relayed to Detective Byerly.

At approximately 3:30 p.m. on November 3, 1994, five officers from the Lycoming County Drug Task Force arrived at the Susquehanna Bus Station in Williamsport. All of the officers were wearing jackets bearing the words "Lycoming County Drug Task Force." After the bus arrived, two detectives boarded the bus and checked for unclaimed baggage, but none was found. The detectives observed appellant standing with his baggage in the public area of the bus station. He appeared to match the description given to them by Detective Paret. Detective Aldenderfer approached appellant and identified himself as a member of the Drug Task Force. The detective informed appellant that they had reason to believe that he was carrying narcotics and asked for consent to search his baggage and person. The appellant responded that it would be "no problem." Detective Aldenderfer and Gyurino then began searching appellant's baggage. Detective Bonnell asked Detective Aldenderfer if appellant had given consent for the officers to search appellant's person. The detective replied in the affirmative. Detective Bonnell then searched appellant and found two packets of heroin in his wallet.

Appellant moved to suppress the evidence. The lower court denied appellant's request for suppression, and he was convicted of possession of a controlled substance and possession of drug paraphernalia. This appeal followed.

After a thorough review of the record, appellant's brief[3] and the applicable law, it is our determination that appellant was "seized" for the purposes of the Fourth Amendment to the

3. We note that the Commonwealth did not submit a brief for our review.

United States Constitution and Article I, Section 8 of the Pennsylvania Constitution.[4] We further find that the officers did not have the requisite "articulable suspicion" to justify the stop under the *Terry* doctrine. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

■■■■ Article I, Section 8 of the Pennsylvania Constitution provides: "The people shall be secure in their persons, house, papers and possessions from unreasonable searches and seizures. . . . " The guarantees under the Fourth Amendment to the United States Constitution are similar. "The Fourth Amendment provides that 'the right of the people to be secure in their persons, houses, papers, and, effects against unreasonable searches and seizures, shall not be violated. . . . ' " *Commonwealth v. Lewis*, 535 Pa. 501, 636 A.2d 619, 622 (1994). Both Constitutions prohibit searches and seizures that are unsupported by objective justification, including all seizures of the person, even during a brief detention. *Terry, supra. See Commonwealth v. Parker*, 422 Pa.Super. 393, 619 A.2d 735 (1993).[5]

> [However,] not every encounter between a citizen and the police is so intrusive as to trigger the protections provided by the ... Constitutions. There is nothing in the Constitutions which prevent a policeman from approaching a person on a public street or in a public place in order to make inquiries of that person.

**4.** We note that appellant has failed to indicate whether his seizure was in violation of the Fourth Amendment to the United States Constitution, Article I, Section 8 of the Pennsylvania Constitution, or both Constitutions. For the sake of judicial economy, we will analyze this case under both Constitutions.

**5.** The protections of individual privacy against unreasonable governmental searches and seizures under the Pennsylvania Constitution are more expansive than those afforded under the United States Constitution. *Commonwealth v. Parker*, 422 Pa.Super. 393, 619 A.2d 735, 738 (1993). The United States Supreme Court's interpretations of Fourth Amendment guarantees do not bind this court in reaching conclusions regarding the protections afforded under Article 1, Section 8 of the Pennsylvania Constitution. *Id.* However, we conclude that under both the state and federal constitutional provisions, the search and seizure in this case was unconstitutional.

*In Interest of Jermaine*, 399 Pa.Super. 503, 582 A.2d 1058, 1060 (1990), *alloc. denied*, 530 Pa. 643, 607 A.2d 253 (1992) (citations omitted). "Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification." *Jermaine*, 582 A.2d at 1064 (Popovich, J., dissenting) (citations omitted).

 However, when officers, by means of physical force or a show of authority have restrained the liberty of an individual, a "seizure" has occurred. *Lewis*, 636 A.2d at 623. " '[A]ny curtailment of a person's liberty by the police must be supported at least by a reasonable and articulable suspicion that the person seized is engaged in criminal activity.' " *Lewis*, 636 A.2d at 623.

 The United States Supreme Court has articulated the following test to determine whether a particular encounter constitutes a seizure: " '[A] court must consider all [of] the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' request[s] or otherwise terminate the encounter.' " *Lewis*, 636 A.2d at 623 (quoting *Florida v. Bostick*, 501 U.S. 429, 439, 111 S.Ct. 2382, 2389, 115 L.Ed.2d 389 (1991)). Applying the test to the facts of this case, we find that, under the totality of the circumstances, the police conduct would have communicated to a reasonable person that the person was not free to leave, and, thus, appellant was "seized."

Here, appellant was confronted by five Lycoming County officers, who were wearing jackets bearing the words "Lycoming County Drug Task Force," when he disembarked from the bus in Williamsport. He was approached directly by police officers and was told that he was suspected of possessing illegal narcotics. Under these circumstances, the combination of the threatening presence of several officers and the officers' indication that appellant was suspected of criminal activity, a reasonable person would believe that he was not free to leave. We find that the nature of the confrontation demonstrated a

show of authority which constituted a restraint of appellant's liberty. Therefore, appellant was seized by the police before being asked to consent to a search of his baggage and person. *See Lewis, supra* (holding that appellant was seized where he was confronted by four officers who indicated that they were "working narcotics" and were part of a drug interdiction program); *Jermaine, supra* (indicating that the threatening presence of several officers and unsupported outright accusations of criminal activity constitute a "seizure").

██ Having found that appellant was seized within the meaning of the Fourth Amendment, we must determine whether "there were 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warranted that intrusion.'" *Lewis,* 636 A.2d at 623 (citing *Terry,* 392 U.S. at 21, 88 S.Ct. at 1884). A stop for investigatory purposes is justified only if the "police officer[s] observe unusual conduct which leads ... [them] reasonably to conclude in light of ... [their] experience that criminal activity may be afoot...." *Terry,* 392 U.S. at 30, 88 S.Ct. at 1884. "This standard is met 'if the police officers' reasonable and articulable belief that criminal activity was afoot [is] linked with ... their observations of suspicious or irregular behavior on behalf of the particular defendant stopped." *Lopez,* 609 A.2d at 180 (citing *Commonwealth v. Espada,* 364 Pa.Super. 604, 528 A.2d 968, 970 (1987)). In evaluating the reasonableness of a stop by the police, we must look to the totality of the circumstances. *Commonwealth v. Daniels,* 410 Pa.Super. 275, 599 A.2d 988 (1991), *appeal denied,* 531 Pa. 645, 612 A.2d 983 (1992).

██ The reasonable suspicion necessary to justify a *Terry* stop is less stringent than probable cause, but the detaining officer must have more than a hunch as the basis for a stop. *In Interest of S.D.,* 429 Pa.Super. 576, 633 A.2d 172, 174 (1993) (citation omitted). "'Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by [the] police and its degree of reliability.'" *Interest of S.D.,* 633 A.2d at 174 (quoting *Alabama v. White,*

496 U.S. 325, 329, 110 S.Ct. 2412, 2415–16, 110 L.Ed.2d 301 (1990)). We note that police officers need not personally observe the illegal or suspicious conduct which lead them to believe that criminal activity is afoot. *Interest of S.D., supra.* The police may rely on information from third parties. *Id.*

■■■ Here, appellant was stopped by police officers because he fit the description of an individual who was a black male, had traveled to Williamsport from Philadelphia via Wilkes–Barre, had purchased his ticket "at the last minute" and, according to a bus driver, was acting suspiciously. None of the officers testified that they observed any suspicious or irregular behavior on appellant's behalf when he disembarked from the bus. In addition, the record does not indicate the objective reasons given for the bus driver's belief that appellant was "acting suspiciously." Viewing the evidence in its totality, we cannot find that the officers had a reasonable suspicion to make a *Terry* stop. The mere fact that appellant was travelling a certain route, purchased his bus ticket in a certain way, and was, according to a bus driver, "acting suspiciously" is not sufficient basis for finding that the police had reasonable suspicion to make a *Terry* stop. Consequently, the heroin found in appellant's wallet was inadmissible even though he consented to the search because it was the product of an illegal detention, and not the result of an independent act of free will. *See Daniels, supra.* Therefore, the heroin seized from appellant's wallet should have been suppressed.

Judgment of sentence is vacated and this case is reversed and remanded. Jurisdiction is relinquished.