621 A.2d 124

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Patrick FOUNTAIN.**

Superior Court of Pennsylvania.

Argued Sept. 1, 1992.

Filed Dec. 23, 1992.

Reargument Denied March 5, 1993.

Dennis C. McAndrews, Asst. Dist. Atty., Media, for Com., appellant.

William Ruane, Radnor, for appellee.

Before CIRILLO, POPOVICH and HOFFMAN, JJ.

HOFFMAN, Judge:

This is a Commonwealth appeal from the February 3, 1992 order suppressing evidence seized during a search of an automobile. The Commonwealth argues that the trial court erred in granting the suppression order where:

> 1) the vehicle drove away from the officer at a high rate of speed from a high crime area and ignored a traffic control device at a railroad grade crossing in violation of the Motor Vehicle Code, 2) the officer observed furtive movements among the vehicle's three occupants upon stopping the vehicle and 3) the operator of the vehicle was unable to provide a valid driver's license or proof of ownership of the vehicle.

Commonwealth's Brief at 3. For the following reasons, we affirm.

Appellee was arrested and charged with possession of a firearm without a license [1] and criminal conspiracy.[2] On January 4, 1992, appellee filed a motion to suppress the seizure of the gun. Following a hearing on January 13, 1992, the

1. 18 Pa.C.S.A. § 6106.
2. 18 Pa.C.S.A. § 903.

suppression court granted appellee's motion. The Commonwealth timely appealed from that order.[3]

■ Our standard of review of an order granting a motion to suppress is well-settled. We may consider

> only the evidence of the defendant's witnesses and so much of the Commonwealth evidence that, read in the context of the record as a whole, remains uncontradicted. Furthermore, our scope of appellate review is limited primarily to questions of law. We are bound by the suppression court's findings of fact if those findings are supported by the record. Factual findings wholly lacking in evidence, however, may be rejected.

*Commonwealth v. Marconi*, 408 Pa.Super. 601, 697, 597 A.2d 616, 619 (1991) (citations omitted), *appeal denied* 531 Pa. 638, 611 A.2d 711 (1992). We may reverse the suppression court only if its legal conclusions, drawn from the facts in the record, are erroneous. *Commonwealth v. Cauto*, 369 Pa.Super. 381, 393–94, 535 A.2d 602, 608–09 (1987), *appeal denied* 521 Pa. 601, 555 A.2d 112 (1988); *Commonwealth v. Vinson*, 361 Pa.Super. 526, 530, 522 A.2d 1155, 1157 (1987).

The following facts were found by the suppression court:

1. On June 15, 1991 at approximately 11:30 o'clock p.m., Officer Richard Gibney of the Darby Borough police department was on duty in full uniform in a parked police vehicle in the vicinity of 6th Street and Greenway Avenue in Darby Borough, Delaware County, PA, an area known for illegal drug activity.

2. Officer Gibney observed a parked vehicle with three occupants. As his vehicle approached, the subject vehicle was started and proceeded to pull away at a high rate of speed. Officer Gibney followed and at the intersection of 5th Street and Greenway Avenue the subject vehicle proceeded around railroad grade crossing gates which were down, a violation of the Motor Vehicle Code.

---

**3.** In its brief, the Commonwealth asserts that this order effectively terminates the instant prosecution. Accordingly, the order is appealable. Pa.R.A.P. Rule 311(d).

3.  Officer Gibney activated his siren and flashing lights and stopped the vehicle approximately five blocks away. Two individuals were seated in the front seat of the subject vehicle and one individual in the back seat. Defendant, Patrick Fountain, was seated in the front passenger seat. Officer Gibney observed a great deal of movement between the occupants of the subject vehicle.

4.  Officer Gibney requested the operator of the subject vehicle to produce his registration card; however, the driver responded that this was not his vehicle and that he had no cards. By this time, at least three other police officers had arrived at the scene to back up Officer Gibney. Officer Gibney directed the occupants to exit the subject vehicle and, as they did so, they were taken to the rear of the vehicle and patted down.

5.  While other officers remained with the three occupants at the rear of the vehicle, Officer Gibney searched the vehicle's passenger compartment for weapons. On the back of the driver's seat the officer observed a pouch which "appeared to have something in it." He reached into the pouch and found a .25 caliber pistol which he seized. The three occupants of the vehicle were then placed under arrest for possession of the firearm without a license.

Order, 2–3–92, at 1–3. Based on the above facts the trial court was unable to conclude that the police officer was justified in searching for and seizing the weapon.

The Commonwealth first argues that the trial court erred in granting defendant's motion to suppress because the officer had sufficient probable cause to believe that the subject vehicle or its occupants were involved in criminal activity. The Commonwealth points to *Commonwealth v. Milyak,* 508 Pa. 2, 493 A.2d 1346 (1985) which sets forth the standard governing warrantless searches of automobiles. In *Milyak,* our Supreme Court stated that

To justify ... a [warrantless] search ..., an officer must have independent probable cause to believe that a felony has been committed by the occupants of the vehicle, or that it has been used in the furtherance of the commission of a

felony, or the officer must have a basis for believing that evidence of a crime is concealed within the vehicle, or that there are weapons therein which are accessible to the occupants.

*Id.* at 8, 493 A.2d at 1349.

■ In its order granting suppression, the court stated that "[n]o testimony was presented which would justify opening and searching the pouch." Order, 2–3–92, at 4. Moreover, in its brief opinion in support of that order, the court noted that "[i]t was apparent from the testimony that the arresting officer possessed no imperative which would allow him to transgress constitutional bounds and search the pouch." Opinion, 4–10–92. We agree.

Officer Gibney testified that when he first noticed the parked car he saw no activity between the passengers of the car and anyone outside of the car that would amount to criminal activity. N.T. January 13, 1992, at 13. He further stated that before the car ran through the railroad gates, the only thing that made him suspicious was "the way [the car] sped off." *Id.* He only followed the car "to see what that led to, if they were running from me or what was going through [sic]. . . ." *Id.* He claimed that if the car had not gone around the railroad gate, he would not have stopped them, but would only have continued to follow them. *Id.* at 14. Moreover, the officer did not describe what can be considered suspicious activity on the part of the car's occupants. Rather, he only said that he saw "movement" among them. We note that it was not until this appeal that the movements were described as "furtive."

The Commonwealth's argument that "the possible possession of stolen property is a factor to be considered in the evaluation of the existence of probable cause" is specious in light of the officer's testimony that he only stopped the car after it ran through the railroad crossing. Moreover, the Commonwealth's reliance on *Commonwealth v. Woodard,* 307 Pa.Super. 293, 453 A.2d 358 (1982) is misplaced. In *Woodard,* a police officer stopped a vehicle after observing traffic offenses. The driver was unable to produce either a driver's

license or registration but claimed that the car belonged to a relative. The officer then noticed two "Hertz Rental Car" stickers on the vehicle and detained the driver while the officer called the National Crime Information Center to determine whether the vehicle was stolen. The officer's observations of the stickers and the driver's inability to produce any rental agreement were clearly reason to suggest that the car did not belong to the driver.[4] In the instant case, on the other hand, the officer presented little reason to have suspected that the automobile was stolen.[5]

The Commonwealth's second argument is that the search was permissible under *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). Pursuant to *Michigan v. Long,* a police officer may search a vehicle if he reasonably believes that the driver or an occupant is dangerous *and* that the driver or occupant may gain immediate control of weapons. *Id.* at 1049, 103 S.Ct. at 3481. The suppression court correctly concluded that under the circumstances, the officer did not reasonably entertain such a belief.

Officer Gibney waited for backup before he began taking the passengers from the car. N.T. at 15. Three uniformed officers joined Officer Gibney in detaining the passengers. Each of the three passengers was frisked as they exited the car, and no weapons were found. *Id.* Officer Gibney and another officer then conducted the search of the car while the other two officers guarded the three men who were detained outside the vehicle. *Id.* at 16–17. Thus, when Officer Gibney was conducting the search of the passenger compartment of the automobile, the passengers no longer had access to the vehicle. This situation is distinguishable from the facts of *Michigan v. Long.* There, two police officers stopped a car which they had seen travelling erratically and at an excessive speed. When the officers repeated a request for identifica-

---

4. We note that *Woodard* involved only the question of the propriety of the detention and warrantless arrest of the driver. In the instant case, the detention for the Motor Vehicle Code violation was proper; the issue here concerns the propriety of the search.

5. The mere failure to present registration is not enough to give rise to a belief that a car is stolen.

tion, the driver who "appeared to be under the influence," walked toward the open door of the car, apparently to obtain the registration, and the officers followed him and saw a hunting knife on the floorboard of the driver's side of the car. The officers stopped the driver and subjected him to a *Terry* protective patdown which produced no weapons. The officers then conducted a brief search of the automobile for *other* weapons which resulted in the discovery of marijuana.

Under the facts of the instant case, we are unable to find that an officer could reasonably believe that the driver or any of the occupants were dangerous and that they could gain immediate control of weapons. Accordingly, we affirm the order granting suppression of the evidence.

Affirmed.

CIRILLO, J., files a dissenting opinion.

CIRILLO, Judge, dissenting:

I most respectfully dissent. While I agree with the majority's analysis regarding the rationale underlying a search under *Michigan v. Long, supra,* I cannot agree that it is dispositive of this case. We are bound by the reasonable factual findings of the suppression court, *Commonwealth v. Hamlin,* 503 Pa. 210, 469 A.2d 137 (1983); however, we must reverse if we find an error of law. *Commonwealth v. Cortez,* 507 Pa. 529, 491 A.2d 111, *cert. denied,* 474 U.S. 950, 106 S.Ct. 349, 88 L.Ed.2d 297 (1985).

A forcible stop of a motor vehicle by a police officer constitutes a seizure of a person and activates the protections of the Fourth Amendment of the U.S. Constitution. *Commonwealth v. Swanger,* 453 Pa. 107, 307 A.2d 875 (1973); *Commonwealth v. Brown,* 388 Pa.Super. 187, 565 A.2d 177 (1989). However, a forcible stop and seizure is not unreasonable under the Fourth Amendment where the officer has articulable and reasonable grounds to suspect, or probable cause to believe that criminal activity may be afoot. *Swanger, supra; see Commonwealth v. Richards,* 458 Pa. 455, 327 A.2d 63 (1974). Here, the record establishes that the vehicle in which Fountain was a passenger

was stopped for a violation of the Motor Vehicle Code. Such a stop under these facts is permissible under 75 Pa.C.S.A. § 6308. The initial stop, therefore, was proper. *Commonwealth v. Elliott*, 376 Pa.Super. 536, 546 A.2d 654 (1988), *alloc. denied*, 521 Pa. 617, 557 A.2d 721 (1989); *see also Swanger, supra.*

A search without a warrant is generally unreasonable. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304 (1963) *cert. denied*, 375 U.S. 910, 84 S.Ct. 204, 11 L.Ed.2d 149 (1963). Police may not search a home or any place in which a person has a reasonable expectation of privacy without a warrant. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). A warrant is obtained after a neutral magistrate finds that probable cause exists for a search for evidence of a crime. *Aguilar v. Texas*, 378 U.S. 108, 109, 84 S.Ct. 1509, 1511, 12 L.Ed.2d 723 (1964). Probable cause is a product of a totality of the circumstances presented to the magistrate. *Illinois v. Gates*, 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983). *See also Commonwealth v. Rodriguez*, 526 Pa. 268, 585 A.2d 988 (1991).

There are, however, exceptions to the warrant requirement. One is the automobile exception. The automobile exception is separate and distinct from a search to protect the safety of a police officer under *Michigan v. Long, supra*, and is based on a wholly different rationale. *Commonwealth v. Baker*, 518 Pa. 145, 149, 541 A.2d 1381, 1383 (1988). Automobiles are excepted from the warrant requirement because they are inherently mobile and citizens have a lower expectation of privacy in their cars than in their homes. *Milyak, supra.* Under the automobile exception an officer may search a car if he has independent probable cause to believe the automobile has been used in the furtherance of a felony or contains contraband or evidence of a crime. *Id.*

Thus, the question becomes did Officer Gibney have probable cause to believe the vehicle contained contraband or evidence of a crime. Probable cause is defined as "a substantial basis for concluding that a search would uncover evidence

of wrongdoing." *Gates*, 462 U.S. at 236, 103 S.Ct. at 2331. The level of probable cause needed to invoke the automobile exception to the warrant requirement is the same as the probable cause needed for a warrant. *Milyak*, 508 Pa. at 10, 493 A.2d at 1350.

I would find probable cause to search the vehicle under the automobile exception in the testimony of Officer Gibney, who had been a narcotics officer for eight years. Officer Gibney observed a vehicle in a high-crime area which sped off at his approach in an unmarked police car. The car veered around a grade level train crossing barrier in its effort to elude the officer. Officer Gibney turned on his siren and lights; five blocks later the car he was pursuing stopped. As the officer approached the car, he observed movement among the occupants, movement that he "didn't like," based on his training and experience. That movement drew Officer Gibney's attention to the pouch behind the driver's seat. There he saw a bulge which turned out to be the gun in question.

Using the *Gates, supra,* formulation of the totality of the circumstances, I would find that Officer Gibney had the requisite probable cause that contraband or evidence of a crime would be found in the vehicle in question, *Milyak, supra,* and that, therefore, his search of the vehicle was proper and the evidence should not be suppressed.