672 A.2d 792

**COMMONWEALTH of Pennsylvania**

v.

**Joseph GROSSO, Appellant.**

Superior Court of Pennsylvania

Submitted Nov. 13, 1995.

Filed Feb. 27, 1996.

Robert T. Yurchak, Nesquehoning, for appellant.

Charles A. Bressi, Jr., Assistant District Attorney, Pottsville, for Commonwealth, appellee.

Before WIEAND, CIRILLO and FORD ELLIOTT, JJ.

WIEAND, Judge.

Joseph Grosso was tried non-jury, upon stipulated facts, and was found guilty of possession of a small amount of marijuana and possession of drug paraphernalia. He was sentenced for the drug paraphernalia charge to serve a one (1) year period of probation, to perform forty (40) hours of community service and to pay a fine of three hundred ($300.00) dollars.[1] On direct appeal from the judgment of sentence, Grosso asserts that, absent reasonable suspicion that he was presently involved in criminal activity, it was improper for police to seek his consent for a search of his vehicle and person during a routine traffic stop. After careful review, we affirm the judgment of sentence.

In reviewing the ruling of a suppression court, "[a]n appellate court must first ascertain whether the record supports the factual findings of the suppression court, and then determine the reasonableness of the inferences and legal conclusions drawn therefrom." *Commonwealth v. Nester,* 443 Pa.Super. 156, 159, 661 A.2d 3, 4 (1995), citing *Commonwealth v. Oglialoro,* 377 Pa.Super. 317, 318, 547 A.2d 387, 387 (1988), *aff'd,* 525 Pa. 250, 579 A.2d 1288 (1990). This Court's "scope of appellate review is limited primarily to questions of law." *Commonwealth v. Stine,* 372 Pa.Super. 312, 314, 539 A.2d 454, 455 (1988), citing *Commonwealth v. White,* 358 Pa.Super. 120, 123, 516 A.2d 1211, 1212 (1986). " 'If the evidence supports the [suppression] court's factual findings, we are bound by such findings and may only reverse if the legal conclusions drawn therefrom are in error.' " *Commonwealth v. Robinson,* 438 Pa.Super. 119, 123, 651 A.2d 1121, 1123 (1994), quoting

---

1. A concurrent thirty (30) day probationary period was imposed for possession of a small amount of marijuana.

*Commonwealth v. Smith,* 396 Pa.Super. 6, 8, 577 A.2d 1387, 1388 (1990).

Instantly, the pertinent facts have been summarized by the suppression court in the following manner:

[O]n October 13, 1994 Officer Weaver of the Tamaqua Police Department was in the Owl Creek section of Tamaqua, in uniform, in a marked police vehicle operating a VASCAR speed timing device. At 10:30 a.m. on that date he observed a 1973 Chevrolet Pick-up truck traveling 50.7 miles per hour in a posted 35 mile per hour zone.

The officer stopped the truck and secured the driver's license, registration card and insurance card from the occupant who was the defendant. He then returned to his police vehicle in order to write a speeding ticket. He also ran a license check on the truck over his radio. As he was writing the ticket, an off-duty Tamaqua Police Officer, Jack Soberick, who happened to hear the radio call on a monitor, called Officer Weaver on a cellular phone and informed him that the defendant was known to Officer Soberick, was known to have carried concealed weapons in the past, may be carrying a concealed weapon at the present time, was an "Act 64" violator (drug user), and that Officer Weaver should "be careful." Officer Weaver finished preparing the speeding ticket, returned to the truck, handed the defendant all of his cards, and had him sign the citation. While so engaged, he noticed that the defendant appeared to be extremely nervous, much more nervous than usual for a person being ticketed for speeding. Officer Weaver then asked the defendant if he had any weapons in the vehicle or on his person to which the defendant responded "no". Officer Weaver then asked the defendant for consent to search his person and the vehicle for weapons. The defendant replied by stating that it was "all right" with him to do so because he had no weapons. Officer Weaver then had the defendant remove himself from the truck and directed him to place his hands on the hood of the truck so he could pat him down for weapons. While patting him down, [Officer Weaver] felt a hard object in [the defendant's] right jacket pocket. He

squeezed the pocket and felt two vials, a soft substance and something hard which he could not identify. The defendant was wearing an olive green fatigue jacket with a flap over the pocket where the items were located. [Officer Weaver] reached into the defendant's pocket and found a plastic bag which contained green vegetable matter, two black film vials, one of which contained three burnt marijuana cigarettes and the other green vegetable matter. He also found two plastic bags containing suspected marijuana seeds. The hard item was a deer antler which had been fashioned into a pipe that had residue on it which he suspected to be marijuana. The deer antler had been in a pouch which also contained a lighter. The items were seized for analysis and the vegetable matter and residue were determined to be marijuana.

Suppression Court Opinion at pp. 1–2.

 It is well settled that "a police officer may stop a motor vehicle if he or she reasonably believes that a provision of the Motor Vehicle Code is being or has been violated." *Commonwealth v. DeWitt*, 530 Pa. 299, 304, 608 A.2d 1030, 1032 (1992). "Incident to this stop, an officer may check the vehicle's registration, the driver's license and obtain any information necessary to enforce provisions of the motor vehicle code." *Commonwealth v. Sedgwick*, 434 Pa.Super. 448, 450, 644 A.2d 167, 167–168 (1994). See also: 75 Pa.C.S. § 6308(b); *Commonwealth v. Henderson*, 444 Pa.Super. 170, 175–77, 663 A.2d 728, 731 (1995) (en banc). Moreover, "when an officer detains a vehicle for violation of a traffic law, it is inherently reasonable that he or she be concerned with safety and, as a result, may order the occupants of the vehicle to alight from the car." *Commonwealth v. Brown*, 439 Pa.Super. 516, 527, 654 A.2d 1096, 1102 (1995). See: *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). In addition, the courts have held that "an officer has the right to conduct a weapons search of an automobile if there is a reasonable belief that the suspect is dangerous and that the suspect might gain immediate control of weapons." *Commonwealth v. Austin*, 428 Pa.Super. 466, 471, 631 A.2d 625, 627 (1993). See: *Michi-*

*gan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). See also: *Commonwealth v. Fountain,* 423 Pa.Super. 296, 301, 621 A.2d 124, 127 (1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 1058, 127 L.Ed.2d 378 (1994); *Commonwealth v. Morris,* 422 Pa.Super. 343, 350, 619 A.2d 709, 712 (1992).

■ As a general rule, however, a police officer may not conduct a warrantless search of a vehicle pursuant to an ordinary traffic stop without having independent probable cause that the occupants of the vehicle have committed a felony or that evidence of a crime is concealed within the vehicle. *Commonwealth v. Shaffer,* 447 Pa. 91, 104, 288 A.2d 727, 735 (1972), *cert. denied,* 409 U.S. 867, 93 S.Ct. 164, 34 L.Ed.2d 116 (1972); *Commonwealth v. Lewis,* 442 Pa. 98, 101, 275 A.2d 51, 52 (1971). See also: *Commonwealth v. Germann,* 423 Pa.Super. 393, 398–399, 621 A.2d 589, 592 (1993). Similarly, in *Commonwealth v. Lopez,* 415 Pa.Super. 252, 609 A.2d 177 (1992), the Superior Court made the following observations:

[W]hen conducting a routine traffic stop, an officer may request a driver's license and vehicle registration, run a computer check and issue a citation. [*United States v. Guzman,* 864 F.2d 1512, 1519 (10th Cir.1988)]. *See also Commonwealth v. Robinson,* 399 Pa.Super. 199, 582 A.2d 14 (1990), *appeal denied* in 528 Pa. 629, 598 A.2d 282 (1991), (demand to inspect vehicle identification number is within scope of police authority pursuant to traffic violation stop). Upon producing a valid driver's license and registration, the driver must be allowed to proceed on his way, without being subject to further delay by police for additional questioning. *Id.* In order to justify detaining the driver for further questioning, the officer must have "reasonable suspicion 'of illegal transactions in drugs or of any other serious crime.' " *Id.* (quoting *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)).

*Id.* at 261, 609 A.2d at 181–182. See also: *Commonwealth v. Talley,* 430 Pa.Super. 351, 356–357, 634 A.2d 640, 643 (1993); *Commonwealth v. Parker,* 422 Pa.Super. 393, 400–401, 619 A.2d 735, 738–739 (1993).

■ In the instant case, appellant concedes that Officer Weaver acted lawfully when the officer stopped appellant's vehicle for speeding. Appellant contends, however, that upon issuing him a traffic citation, Officer Weaver had no basis for further detaining him to question him about his possible possession of a weapon or to request permission to search his vehicle or person. According to appellant, a report from a fellow officer that appellant was known to carry weapons in the past did not provide Officer Weaver with reasonable suspicion that he was presently involved in criminal activity. In support of this argument, appellant relies upon the decisions of the Superior Court in *Commonwealth v. Parker, supra* and *Commonwealth v. Lopez, supra,* wherein the Court held that, pursuant to a traffic stop, "police may only detain a driver and request a search if there are reasonable and articulable grounds to suspect criminal activity or contraband." *Commonwealth v. Parker, supra* at 400–401, 619 A.2d at 738, citing *Commonwealth v. Lopez, supra.* Therefore, appellant concludes, the consent which he gave to Officer Weaver to search his vehicle and person was the fruit of an illegal detention and, thus, ineffective to justify the search.

■ At the suppression hearing in this case, Officer Weaver testified that, while he was preparing a traffic citation to issue to appellant, he was contacted, via cellular telephone, by Officer Soberick, who informed Weaver that appellant was a drug user and was known to carry concealed weapons. Soberick urged Weaver to exercise caution in dealing with appellant. Thereafter, based upon the information provided by his fellow officer, along with his own observation that appellant was extremely nervous, Officer Weaver inquired whether appellant was carrying a weapon and requested consent to search appellant's vehicle and person. In holding that no violation of appellant's constitutional rights had occurred, the suppression court reasoned as follows:

> The U.S. Supreme Court has ruled that:
> "When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or

to others, he may conduct a limited protective search for concealed weapons."

*Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), as quoted in *Com. v. Mears,* 283 Pa.Super. 416, 424 A.2d 533 (1981). Moreover, reasonable cause for a "stop and frisk" need not be based solely on the officer's observation. Rather, such reasonable cause may be provided by an informant's tip. *Com. v. Mears, Id.* In the instant case, Officer Weaver noted from his own observation that the defendant appeared to be more nervous than is usual for a person being cited for speeding. However, in the absence of any other information it is questionable whether such an observation would provide the reasonable cause necessary to support a "stop and frisk" or justify requesting a consent to search the defendant or his vehicle. In our case, however, Officer Weaver also had been informed by a fellow police officer that the defendant had been known to carry concealed weapons in the past and may have one on his person at the time of the confrontation. He was also admonished to "be careful" and had been informed that the defendant had been an "Act 64" violator (drug user). This information from an extremely reliable informant, coupled with the previously mentioned observation of the officer, constituted sufficient cause to justify a pat down for weapons. Unlike the situation in *Lopez* and *Parker,* the officer in the instant case had been alerted to the possibility that the person with whom he was confronted might be carrying a concealed weapon and was a drug violator. Given the fact that Officer Weaver had been provided with this information and the fact that he observed the defendant's nervous demeanor, we cannot conclude that he acted unlawfully when he requested consent to search the defendant and his vehicle.

Suppression Court Opinion at p. 4.

After careful review, we agree with the suppression court that, under the circumstances with which he was confronted, Officer Weaver could reasonably have concluded that appellant was armed and dangerous, and had immediate access to a

560

concealed weapon. As such, the officer, for his own protection, was permitted to detain appellant briefly to ascertain whether appellant, in fact, had a weapon. Accordingly, appellant's subsequent consent to the search of his person and vehicle was not the product of an illegal detention. Moreover, under the totality of the circumstances surrounding Officer Weaver's search of appellant and his vehicle, it appears that appellant's consent to that search was voluntarily given. See: *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Commonwealth v. Bagley*, 408 Pa.Super. 188, 201, 596 A.2d 811, 817 (1991), *cert. denied*, 506 U.S. 1002, 113 S.Ct. 606, 121 L.Ed.2d 541 (1992). The suppression court, therefore, did not err by denying appellant's motion to suppress the evidence obtained by Officer Weaver.

The judgment of sentence is affirmed.

FORD ELLIOTT, J., concurs in the result.