J-A32029-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| JOEL LAMB, | |
| Appellee | No. 797 EDA 2014 |

Appeal from the Order Entered February 6, 2014
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0006471-2013

BEFORE: PANELLA, OLSON AND FITZGERALD,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED JANUARY 26, 2015**

The Commonwealth of Pennsylvania appeals from the order entered on February 6, 2014, granting Appellee, Joel Lamb's, motions to suppress and dismiss. We reverse and remand.

The factual background of this case is as follows. On June 30, 2013, Pennsylvania State Police Troopers Edward Theodore and Andrew Hearn were using a radar gun to monitor vehicles' speeds on Route 313. The speed limit for that location was 55 miles per hour. Troopers Theodore and Hearn clocked Appellee traveling 65 miles per hour at 3:07 a.m.

Trooper Theodore pulled behind Appellee and followed him for approximately one-half mile. During that time, Appellee never left his lane of travel nor did he violate any other provision of the Motor Vehicle Code (other than speeding). Trooper Theodore proceeded to pull Appellee over

* Former Justice specially assigned to the Superior Court.

for the speeding violation. As he approached Appellee's vehicle, Trooper Theodore recognized the scents of cigar smoke and alcohol emanating from the vehicle. Appellee informed Trooper Theodore that he was a bartender and was coming home from work. He denied that he had been drinking.

Trooper Theodore noticed that Appellee's eyes were bloodshot and glassy. Trooper Theodore asked Appellee to take a portable breath test to confirm that he had not been drinking. Although Appellee eventually agreed to submit to the test, he did not blow a sufficient amount of air when given the test. Trooper Theodore thereafter asked Appellee to exit the vehicle.

When Appellee exited the vehicle, he had some problems with his balance. Trooper Theodore also realized that the smell of alcohol was emanating from Appellee's person, and not his vehicle. Trooper Theodore then conducted the horizontal gaze nystagmus ("HGN") field sobriety test ("FST").[1] Appellee failed at all three attempts to perform the HGN test. Specifically, Appellee followed the object with his whole head each time. Furthermore, his eyes did not follow the object smoothly and, when his pupils reached the corners of his eyes, they jerked. Trooper Theodore then requested Appellee perform the heel-to-toe test.[2] Appellee began the test

---

[1] This test requires that an individual follow an object with his eyes while not moving his head.

[2] This test requires that an individual walk nine steps heel-to-toe along a line, turn, and walk back in the same manner. Although Appellee told
*(Footnote Continued Next Page)*

before directed; had several steps that were not heel-to-toe; took only eight steps going from his original starting position; took an incorrect turn; and took ten steps on his return journey.

Trooper Theodore next requested that Appellee perform the one-legged stand.[3] During his first attempt, Appellee used the car for balance. During his second attempt, he was unable to keep his foot raised. Trooper Theodore again requested Appellee take a portable breath test. Although Appellee did not blow enough air into the machine for an accurate reading, Trooper Theodore used the manual function of the machine to get a blood alcohol content reading of .07. Thereafter, Appellee was placed under arrest for suspicion of driving under the influence of alcohol.

The relevant procedural history of this case is as follows. On October 24, 2013, Appellee was charged via criminal information with driving under the influence – general impairment,[4] driving under the influence – high rate of alcohol,[5] and speeding.[6] On November 13, 2013, Appellee filed an

---

*(Footnote Continued)* ————————————

Trooper Theodore that he had an old ankle injury, he stated that it would not impact his ability to perform the heel-to-toe test.

[3] This test requires that an individual stand on one leg with his hands to his side. **See also** note 2, **supra**.

[4] 75 Pa.C.S.A. § 3802(a)(1).

[5] 75 Pa.C.S.A. § 3802(b).

[6] 75 Pa.C.S.A. § 3362(a)(2).

omnibus pretrial motion, which included a motion to dismiss for destruction of evidence. In particular, it was revealed that Trooper Theodore's dashboard camera recording had been destroyed. Appellee's omnibus pretrial motion also included a motion to suppress the evidence because of an alleged lack of reasonable suspicion to pull Appellee over for driving under the influence. A combined evidentiary hearing was held on February 6, 2014. At the conclusion of the hearing, the trial court granted Appellee's motion to dismiss and, in the alternative, granted Appellee's motion to suppress. This timely appeal followed.[7]

The Commonwealth presents two questions for our review:

1. [Did the trial court err in granting Appellee's motion to dismiss based upon destruction of Trooper Theodore's dashboard camera recording?

2. Did the trial court err in alternatively granting Appellee's motion to suppress all evidence based upon an alleged violation of Appellee's right to be free from unreasonable searches and seizures?]

Commonwealth's Brief at 4.

The Commonwealth contends that the trial court erred in granting Appellee's motion to dismiss. In his motion, Appellee argued that the

---

[7] On March 6, 2014, the trial court ordered the Commonwealth to file a concise statement of errors complained of on appeal ("concise statement"). *See* Pa.R.A.P. 1925(b). On March 10, 2014, the Commonwealth filed its concise statement. On April 16, 2014, the trial court issued its Rule 1925(a) opinion. Both issues raised on appeal were included in the Commonwealth's concise statement.

J-A32029-14

Commonwealth violated his due process rights in failing to preserve the dashboard camera recording. "The decision to grant a pretrial motion to dismiss a criminal charge is vested in the sound discretion of the trial court and may be overturned only upon a showing of abuse of discretion or error of law." *Commonwealth v. Totaro*, 2014 WL 6790441, *2 (Pa. Super. Dec. 3, 2014) (citation omitted).

Our Supreme Court summarized the relevant legal principles that govern a prosecutor's obligation to avoid the suppression or loss of exculpatory evidence consistent with the Due Process Clause of the United States Constitution, as interpreted in *Brady v. Maryland*, 373 U.S. 83 (1963). Our Supreme Court explained:

> In *Brady,* the [Supreme Court of the United States] held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. This Court has held that to prove a *Brady* violation, the defendant has the burden of demonstrating that: (1) the prosecutor has suppressed evidence; (2) the evidence, whether exculpatory or impeaching, is helpful to the defendant, and (3) the suppression prejudiced the defendant. Prejudice is demonstrated where the evidence suppressed is material to guilt or innocence. Further, favorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Commonwealth v. Koehler*, 36 A.3d 121, 133 (Pa. 2012) (internal quotation marks and citations omitted).

- 5 -

A different rule applies where the Commonwealth fails to preserve evidence that is **potentially useful**, as opposed to materially exculpatory. In cases where the prosecution has discarded potentially useful evidence, a due process violation occurs only where the Commonwealth's failure to preserve was done in bad faith, regardless of the centrality of the evidence for the prosecution or defense and regardless of whether the evidence was introduced at trial. ***Commonwealth v. Snyder***, 963 A.2d 396, 404 (Pa. 2009). Where the constitutional right to preservation of evidence is at issue, the Supreme Court of the United States has distinguished "material exculpatory evidence" from "potentially useful evidence" as follows:

> The Due Process Clause of the Fourteenth Amendment, as interpreted in ***Brady***, makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that **it could have been subjected to tests, the results of which might have exonerated the defendant** [,*i.e.* so-called "potentially useful evidence"].

***Arizona v. Youngblood***, 488 U.S. 51, 57 (1988) (emphasis added). Bad faith is shown where evidence is discarded under circumstances "in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant." ***Id.*** at 58.

In this case, Appellee admits that he is unable to prove that the Commonwealth acted in bad faith in destroying the recording. He argues instead that the recording was materially exculpatory evidence and,

therefore, whether the police acted with bad faith is immaterial when determining if his right to due process was violated. The trial court agreed and found that the recording was materially exculpatory for two reasons. First, it found that the recording would show whether Appellee committed any traffic violations after Trooper Theodore pulled behind him that would indicate he was possibly intoxicated. Second, it found that the recording was the only way to show whether Appellee had passed the FSTs administered by Trooper Theodore.

The Commonwealth contends that the evidence was not materially exculpatory as the recording would not definitely show whether Appellee passed all of the FSTs given by Trooper Theodore. Furthermore, the Commonwealth argues that the recording was immaterial to the reasonable suspicion analysis as Trooper Theodore's observation of Appellee speeding was sufficient to pull him over, the speeding violation would not have been captured by the recording, and reasonable suspicion to investigate driving under the influence emerged from Appellant's bloodshot eyes and the odor of alcohol emanating from Appellee's person.

We reject the trial court's rationale that the recording was materially exculpatory because it would have shown whether Appellee was weaving while Trooper Theodore was following him. Even if the video showed that Appellee were not weaving, as discussed in more detail below, Trooper Theodore had probable cause to pull Appellee over for the speeding

violation. Thus, the recording was immaterial when considering whether the traffic stop was lawful.

Having determined that the recording was not materially exculpatory because of what it may have shown prior to the stop, we turn to whether the recording was materially exculpatory for what it may have shown during the traffic stop. The facts in this case are similar to the facts in **Commonwealth v. Spotti**, 94 A.3d 367 (Pa. Super. 2014) (*en banc*). In **Spotti**, the defendant was involved in a motor vehicle accident while being pursued by police. *Id.* at 369. The police officer who was chasing Spotti did not preserve the recording of the chase because, he said, it did not show the accident at issue in the case. *Id.* at 382.

Spotti argued that the recording was materially exculpatory evidence as it may have shown that one of the other drivers involved in the crash was driving recklessly. This Court rejected that argument and held that the recording was potentially useful evidence. *Id.* at 383-384. Specifically, this Court held that Spotti's "claim that the recording may have depicted [the other driver] engaging in unsafe driving is purely speculative. The mere possibility that the recording might have depicted events differently does not establish materiality." *Id.* at 383 (internal quotation marks and citation omitted).

The case *sub judice* is similar. The recording may have depicted Appellee passing the FSTs administered by Trooper Theodore; however, such

a claim is purely speculative. The fact that the recording may have depicted events differently than Trooper Theodore's testimony does not prove materiality.

We find instructive a decision of the Supreme Court of the United States. In *Illinois v. Fisher*, the defendant was arrested in 1988 for possession of cocaine. 540 U.S. 544, 545 (2004). Prior to trial, he fled to avoid the charges. *Id.* In 1999, the police destroyed the cocaine seized during the traffic stop despite the fact that Fisher had not yet been tried for the crime and there was a pending discovery request from defense counsel to examine the drugs. *Id.* at 546. The Supreme Court of the United States held that such evidence was plainly potentially useful evidence under *Youngblood*. *Id.* at 548. Even though examination of the substance may have been Fisher's only path to acquittal, he was still required to prove bad faith in order to have the charges dismissed. *Id.* at 548-549.

As in *Fisher*, the recording in this case would not have proven Appellee's innocence. Instead, as in *Fisher*, the recording would have been subject to testing, *i.e.*, viewing, in order to ascertain its contents. Thus, as in *Fisher*, the recording in this case was plainly potentially useful evidence and not materially exculpatory evidence.

We also find persuasive the decision of the Court of Appeals of California, Fourth District, Division 3 in *California v. Alvarez*, 176 Cal. Rptr. 3d 890 (App. 4 Dist. 2014). In *Alvarez*, surveillance video was destroyed

which may have shown that two defendants in a robbery case were not involved with the third defendant. The appellate court held that such evidence was not materially exculpatory. *Id.* at 902. Instead, the court found that the evidence was potentially useful under ***Youngblood***. *Id.* at 902. Accordingly, it held that the defendants were required to show bad faith on the part of the state in order to have the charges dismissed. *Id.*

We also find persuasive the decision of the United States District Court for the Western District of Missouri in ***United States v. Butler***, 2011 WL 5387535 (W.D. Mo. Sept. 29, 2011), *adopted*, 2011 WL 5374578 (W.D. Mo. Nov 07, 2011). In ***Butler***, two officers pursued the defendant. *Id.* at *1. That pursuit was recorded by their dashboard camera. *Id.* One year later, the video was destroyed. *Id.* at *2. Butler filed a motion to dismiss arguing that the failure of the officers to preserve the dashboard recording violated his right to due process. *Id.* The United States District Court for the Western District of Missouri found that the dashboard recording was merely potentially useful evidence, and not materially exculpatory evidence. *Id.* As Butler could not prove bad faith, his motion to dismiss was denied. *Id.* at *3.

As in ***Alvarez*** and ***Butler***, the video in the instant case was merely potentially useful and not materially exculpatory. There was no evidence presented that the recording would definitively show that Appellee passed the FSTs. To the contrary, at oral argument Appellee admitted that whether

the video would be exculpatory would depend on the quality of that video and what actually occurred during the traffic stop. It is equally likely that the recording would have corroborated Trooper Theodore's testimony, *i.e.*, Appellee failed each of the FSTs. In its Rule 1925(a) opinion, the trial court agreed, noting that "Appellee did not know that the video would either bear out his version of everything that happened that night or would bear out [Trooper Theodore's] version." Trial Court Opinion, 4/16/14, at 2.

Accordingly, we conclude that the trial court erred as a matter of law in finding that the recording was materially exculpatory evidence. Instead, the record reflects that the recording was merely potentially useful evidence. Therefore, Appellee was required to show that the Commonwealth acted in bad faith by destroying the recording in order to have the charges dismissed. As Appellee concedes that he is not able to prove bad faith, the trial court erred by granting the motion to dismiss premised on a violation of Appellee's right to due process of law.

We now turn to the trial court's alternative determination, *i.e.*, that dismissal of the charges was warranted under Pennsylvania Rule of Criminal Procedure 573(E). That rule provides that:

> If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with [its discovery obligations], the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

Pa.R.Crim.P. 573(E). "Although not expressly included in the list of remedies, a trial court does have the discretion to dismiss the charges [under Rule 573(E)], but only for the most extreme and egregious violations." *Commonwealth v. Hemingway*, 13 A.3d 491, 502 (Pa. Super. 2011), *appeal denied sub. nom. Commonwealth v. Styers*, 24 A.3d 864 (Pa. 2011) (citation omitted); *see Commonwealth v. Smith*, 955 A.2d 391, 394 (Pa. Super. 2008) (*en banc*) (citation omitted).

In this case, Appellee *de facto* admits that this is not an extreme and egregious violation of Rule 573 sufficient to warrant dismissal. Specifically, Appellee admits that the Commonwealth's destruction of the recording does not rise to the level of bad faith. If the destruction were not done in bad faith then certainly the Commonwealth's failure to comply with its discovery obligations, by destroying the recording, was likewise not extreme and egregious. Accordingly, we conclude that the trial court abused its discretion in dismissing the charges under Rule 573(E). The trial court had other options available in order to remedy the discovery violation. A lesser sanction would have been more appropriate in these circumstances. As we conclude that both rationales given by the trial court for dismissal of the charges were erroneous, we reverse the order of the trial court granting Appellee's motion to dismiss the charges.

We next consider the trial court's suppression of the evidence gathered by Trooper Theodore. "Our standard of review in addressing a challenge to

- 12 -

J-A32029-14

the [grant] of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." ***Commonwealth v. Stem***, 96 A.3d 407, 409 (Pa. Super. 2014) (citation omitted). "[O]ur scope of review is limited to the factual findings and legal conclusions of the [trial] court." ***In re L.J.***, 79 A.3d 1073, 1080 (Pa. 2013) (citation omitted). "[W]e are limited to considering only the evidence of the prevailing party, and so much of the evidence of the non-prevailing party as remains uncontradicted when read in the context of the record as a whole." ***Id.***

"As [this Court has] explained, the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect citizens from unreasonable searches and seizures." ***Commonwealth v. Clemens***, 66 A.3d 373, 378 (Pa. Super. 2013) (internal alteration and quotation marks omitted). The burden is on the Commonwealth to prove, by a preponderance of the evidence, that the evidence seized from Appellee was legally obtained. ***See Commonwealth v. Howard***, 64 A.3d 1082, 1087 (Pa. Super. 2013), *appeal denied*, 74 A.3d 118 (Pa. 2013) (citation omitted). Probable cause is required to conduct a traffic stop when the infraction at issue does not require any further investigation. ***Commonwealth v. Brown***, 64 A.3d 1101, 1105 (Pa. Super. 2013), *appeal denied*, 79 A.3d 1096 (Pa. 2013) (citation omitted).

- 13 -

The Commonwealth contends that the trial court erred by granting Appellee's motion to suppress the evidence gathered during the traffic stop. It argues that Trooper Theodore had probable cause to pull Appellee over because of the speeding violation. It further contends that once Trooper Theodore pulled Appellee over for speeding, he properly gathered the requisite reasonable suspicion to extend the traffic stop and to ascertain whether Appellee was driving under the influence of alcohol.

In this case, the trial court found that the traffic stop was conducted in order to investigate a DUI – thereby requiring Trooper Theodore to have reasonable suspicion that Appellee was driving under the influence. **See Commonwealth v. Weaver**, 76 A.3d 562, 568 (Pa. Super. 2013), *aff'd*, 2014 WL 6750608 (Pa. Dec. 1, 2014) (*per curiam*) (requiring reasonable suspicion to pull a suspect over for driving under the influence). This mixed finding of fact and conclusion of law, however, is not supported by the record and is contrary to controlling Pennsylvania authority. The record is clear that Trooper Theodore pulled Appellee over for the speeding violation. **See** N.T., 2/6/14 v.I, at 37 (Trooper Theodore stating that the only reason he pulled Appellee over was for the speeding violation).[8] Although Trooper Theodore followed Appellee for approximately one-half mile after originally observing the speeding violation, this distance was reasonable. It is

_____

[8] The notes of testimony of the suppression hearing are in two volumes. We cite to volume I as v.I and to volume II as v.II.

impossible to pull a vehicle over in a matter of yards when that vehicle is traveling at 65 miles per hour. Rather, it takes some time to pursue the vehicle, determine that it is safe to pull the vehicle over, and then effectuate the traffic stop. Therefore, we conclude that the record does not support the trial court's finding. Instead, the record establishes that the traffic stop was initiated in response to Appellee's speeding violation. Trooper Theodore clearly had probable cause to stop Appellee for the speeding violation as his radar gun registered Appellee's vehicle going 65 miles per hour in a 55 miles per hour zone.

Although Trooper Theodore had probable cause to pull Appellee over, that does not end our inquiry. As this Court has explained:

> When conducting a routine traffic stop, an officer may request a driver's license and vehicle registration, run a computer check and issue a citation. Upon producing a valid driver's license and registration, the driver must be allowed to proceed on his way, without being subject to further delay by police for additional questioning. In order to justify detaining the driver for further questioning, the officer must have reasonable suspicion of illegal transactions in drugs or of any other serious crime.

*Commonwealth v. Grosso*, 672 A.2d 792, 794 (Pa. Super. 1996) (internal alteration, citations, and quotation marks omitted).

As this Court has explained:

> Reasonable suspicion is a less stringent standard than probable cause necessary to effectuate a warrantless arrest, and depends on the information possessed by police and its degree of reliability in the totality of the circumstances. . . . In assessing the totality of the circumstances, courts must also afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience and acknowledge that

- 15 -

innocent facts, when considered collectively, may permit the investigative detention.

The determination of whether an officer had reasonable suspicion . . . is an objective one, which must be considered in light of the totality of the circumstances.

*Clemens*, 66 A.3d at 379 (ellipsis and citation omitted).

In this case, Trooper Theodore had reasonable suspicion to believe that criminal activity was afoot, *i.e.*, Appellee was driving under the influence of alcohol. Specifically, Trooper Theodore testified that when he approached the vehicle he smelled alcohol emanating from it. *See* N.T., 2/6/14 v.I, at 37. Furthermore, Trooper Theodore testified that he observed that Appellee had glassy and bloodshot eyes. *See* N.T., 2/6/14 v.II, at 4. This information gave Trooper Theodore reasonable suspicion to believe that Appellee was driving under the influence. *See Commonwealth v. Segida*, 985 A.2d 871, 879 (Pa. 2009). Therefore, Trooper Theodore had lawful justification to request that Appellee perform various FSTs. When Appellee failed those FSTs, Trooper Theodore obtained probable cause to arrest Appellee for driving under the influence. *See Commonwealth v. Cauley*, 10 A.3d 321, 327 (Pa. Super. 2010). Accordingly, Trooper Theodore did not violate Appellee's right to be free from unreasonable searches and seizures. The trial court's conclusion to the contrary was an error of law and we therefore reverse the order granting Appellee's motion to suppress.

In sum, we conclude that the recording of the traffic stop was potentially useful evidence and not materially exculpatory evidence.

Appellee was therefore required to prove that the Commonwealth acted in bad faith by destroying that evidence. As Appellee conceded during oral argument, he cannot prove that the Commonwealth acted in bad faith. Likewise, the Commonwealth's failure to produce the recording was not such an egregious violation of Rule 573 to warrant dismissal of the charges. Thus, the trial court erred by granting Appellee's motion to dismiss. Furthermore, we conclude that the trial court erred in finding that Trooper Theodore pulled Appellee over for suspicion of driving under the influence. Instead, he was pulled over for speeding and Trooper Theodore later developed, because of the odor of alcohol, combined with bloodshot and glassy eyes, reasonable suspicion to suspect that Appellee may have been driving under the influence of alcohol. Accordingly, the trial court erred by alternatively granting Appellee's motion to suppress.

Order reversed. Case remanded. Jurisdiction relinquished.

Panella, J., joins this memorandum.

Fitzgerald, J., notes dissent.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/26/2015

- 17 -