J-A32026-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| BOBBIE LIONEL HENDERSON III, | |
| Appellee | No. 1363 EDA 2014 |

Appeal from the Order Dated March 27, 2014
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0008071-2013

BEFORE:  PANELLA, OLSON AND FITZGERALD,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED JANUARY 28, 2015**

Appellant, the Commonwealth of Pennsylvania (the Commonwealth), appeals from the order dated March 27, 2014 granting a motion to suppress evidence filed by Appellee, Bobbie Lionel Henderson, III (Appellee).[1]  Upon careful consideration, we reverse the order granting suppression and remand for trial.

We briefly summarize the facts of this case as follows.  On August 31, 2013, at 3:30 a.m., Pennsylvania State Police Trooper Jeffrey Hand observed Appellee driving on Route I-95 in Bensalem Township, Bucks County.

---

[1] "The Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution."  Pa.R.A.P. 311.  The Commonwealth has complied with Rule 311 and the appeal is properly before us.

*Retired Justice specially assigned to the Superior Court.

Appellee was driving in the middle lane of the interstate when he came to an almost complete stop, activated his left turn signal, made an abrupt, almost 90-degree turn to the right (over another lane of travel and the gore of the road), and traveled down the exit ramp at the Woodhaven exit. Trooper Hand followed Appellee for a mile and effectuated a traffic stop near the Franklin Mills Mall. Trooper Hand observed Appellee had bloodshot eyes and he smelled the odor of alcohol and burnt marijuana. Trooper Hand administered several field sobriety tests, concluded that Appellee was under the influence of alcohol and/or a controlled substance, and arrested Appellee.

The trial court summarized the procedural history of this case as follows:

> On August 31, 2013, [Appellee] was arrested and charged on Information 8071-2013 with six (6) counts of driving under the influence of alcohol or controlled substance ("DUI") (2nd offense), including general impairment, 75 Pa.C.S.A. § 3802(a)(1); high rate of alcohol (0.10 – 0.16%), 75 Pa.C.S.A. § 3802(b); controlled substance – impaired ability, 74 Pa.C.S.A. § 3802(d)(2); controlled substance – schedule I, 75 Pa.C.S.A. § 3802(d)(1)(i); controlled substance – metabolite, 75 Pa.C.S.A. § 3802(d)(1)(ii) and controlled substance – combination alcohol and drug (blood alcohol level 0.117), 75 Pa.C.S.A. § 3802(d)(3). In addition, Appellee was charged with two (2) summary traffic violations, including one count of turning movements and required signals, 75 Pa.C.S.A. § 3334(a), and one count of minimum speed regulation – too slow for conditions, 75 Pa.C.S.A. § 3364(a).
>
> On March 4, 2014, Appellee filed an omnibus pre-trial motion seeking to suppress all evidence obtained as a result of his purported stop and arrest by the Pennsylvania State

Police on August 31, 2013. On March 31, 2014, Appellee filed a supplemental omnibus pre-trial motion [] seeking to dismiss all charges against him due to the spoliation by way of destruction of videotape evidence from [] Trooper[ Hand's] onboard video equipment which evidence was allegedly favorable to him. A suppression hearing was held on March 27, 2014, at which time [the trial court] denied Appellee's motion to dismiss[,] but granted his motion to suppress. On April 23, 2014, the Commonwealth [] filed a notice of appeal[.] On May 2, 2014, [the trial court] ordered the Commonwealth to file a statement of errors complained of on appeal no later than twenty[-]one (21) days from the date of the order pursuant to Pa.R.A.P. 1925(b). On May 6, 2014, the Commonwealth filed its statement of matters complained of on appeal. [The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on May 22, 2014.]

Trial Court Opinion, 5/22/2014, at 1-2 (superfluous capitalization omitted).

On appeal, the Commonwealth raises the following issues for our review:

    A. Whether the trial court erred in finding as fact that Appellee's actions in rapidly decelerating his speed to an almost full stop in the middle lane of the three-lane highway and, after activating [his] left-turn signal, abruptly making a right turn across the right lane of travel and across the gore to the off ramp constituted an "emergency turn," as there was no testimony, evidence, or support for same on the record?

    B. Whether the trial court erred and/or misapplied the standard for motor vehicle stops by holding there was not reasonable suspicion and/or probable cause for the traffic stop based on the totality of the circumstances, the police officer's training and experience, and the police officer's observations that the vehicle operated by Appellee rapidly decelerated in speed to an almost complete stop in the middle lane of the three-lane highway and, then, after activating its left-turn signal abruptly made a right turn across the gore to the off ramp, in apparent violation of the motor vehicle code?

Commonwealth's Brief at 4 (complete capitalization omitted).

Both of the Commonwealth's issues are interrelated and challenge the trial court's grant of suppression, thus, we will examine them together. First, the Commonwealth argues that the trial court erred by making a factual determination, without support in the record, "that Appellee's abrupt, close to perpendicular turn off Interstate 95 constituted an emergency turn." *Id.* at 14. The Commonwealth continues, "[w]hile Trooper Hand agreed the abrupt turn was made as though the driver decided at the last second to make the turn, the suppression court's factual finding that Appellee's exit off of Interstate 95 was due to an emergency is not supported by the record." *Id.* at 14-15. In its next issue presented, the Commonwealth challenges the trial court's ruling that there was no probable cause to initiate a traffic stop because Trooper Hand followed Appellee for approximately a mile after the alleged traffic violation. *Id.* at 15. The Commonwealth argues that "a traffic stop need not be instantaneous upon observing [] a violation [of the Motor Vehicle Code]; instead, an officer is allowed to pursue a suspect of a traffic violation and wait to effectuate the traffic stop due to unsafe conditions." *Id.* at 21. The Commonwealth maintains that there was probable cause to pull Appellee over because he used the wrong turn signal, decelerated rapidly, and abruptly changed lanes. *Id.* at 22. Moreover, the Commonwealth asserts that the trial court further erred by determining that there was no reasonable suspicion to follow Appellee and to effectuate a

traffic stop for further investigation of suspected DUI due to reckless and erratic driving. *Id.* at 16, 25-29.

"Our standard of review in addressing a challenge to the [grant] of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." ***Commonwealth v. Stem***, 96 A.3d 407, 409 (Pa. Super. 2014) (citation omitted). "[O]ur scope of review is limited to the factual findings and legal conclusions of the [trial] court." ***In re L.J.***, 79 A.3d 1073, 1080 (Pa. 2013) (citation omitted). "[W]e are limited to considering only the evidence of the prevailing party, and so much of the evidence of the non-prevailing party as remains uncontradicted when read in the context of the record as a whole." ***Id.***

"As [this Court has] explained, the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect citizens from unreasonable searches and seizures." ***Commonwealth v. Clemens***, 66 A.3d 373, 378 (Pa. Super. 2013) (internal alteration and quotation marks omitted). The burden is on the Commonwealth to prove, by a preponderance of the evidence, that the evidence seized from Appellee was legally obtained. ***See Commonwealth v. Howard***, 64 A.3d 1082, 1087 (Pa. Super. 2013), *appeal denied*, 74 A.3d 118 (Pa. 2013) (citation omitted). Probable cause is required to conduct a traffic stop when the infraction at issue does not require any further

investigation. ***Commonwealth v. Brown***, 64 A.3d 1101, 1105 (Pa. Super.

2013), *appeal denied*, 79 A.3d 1096 (Pa. 2013) (citation omitted).

Here, the trial court concluded that "the only articulable grounds for

the stop was the abrupt exit of Appellee's vehicle. However, the totality of

the circumstances leads to the conclusion that the stop, some extended

distance down the road, was not made for an abrupt turn but for suspected

DUI." Trial Court Opinion, 5/22/2014, at 10. More specifically, the trial

court elucidated:

> While the Trooper asserts that the abrupt turn which the
> Appellee made in order to make the exit from Route 95 that
> [] Appellee almost missed was sufficient to support a
> reasonable suspicion that a Vehicle Code violation had
> occurred, the Trooper did not make the stop at that time.
> Instead, the Trooper set about to investigate whether []
> Appellee was DUI. He pursued that investigation by means
> of following [] Appellee for a considerable distance – that
> distance being well over a mile from Rout I-95 to the end of
> Franklin Mills exit without acquiring any evidence that []
> Appellee was driving while impaired. Therefore, the
> investigatory seizure was unlawful[.] **The stop [would
> have been legally sufficient] if the stop had been
> made when probable cause existed and when the
> abrupt turn with the wrong turn signal occurred.** And,
> while probable cause does not de-materialize, the purpose
> of the stop was not for an unlawful exit; instead, the stop
> was made in connection with an investigation for a DUI.
> That seizure for DUI was without reasonable suspicion for a
> DUI and was without probable cause for a DUI.

*Id.* at 8 (emphasis added).

In this case, the trial court found that the traffic stop was conducted in

order to investigate a DUI – thereby requiring Trooper Hand to have

reasonable suspicion that Appellee was driving under the influence. ***See***

*Commonwealth v. Weaver*, 76 A.3d 562, 568 (Pa. Super. 2013), *aff'd*, 2014 WL 6750608 (Pa. Dec. 1, 2014) (*per curiam*) (requiring reasonable suspicion to pull a suspect over for driving under the influence). Additionally, in the trial court's view, the traffic stop was invalid since Trooper Hand lacked reasonable suspicion. Upon review of the certified record, and viewing the evidence in the light most favorable to Appellee as required, we are persuaded that the trial court's mixed findings of fact and conclusions of law are contrary to the record and controlling Pennsylvania authority.

Herein, Trooper Hand testified without contradiction that he "saw [Appellee's] vehicle decelerating very quickly" and "c[o]me to a near complete stop" in the "[m]iddle lane[]" on I-95 near the Woodhaven exit. N.T., 3/27/2014, at 47-49. Appellee's vehicle "was pretty close to being perpendicular to the [Woodhaven] exit sign" and Appellee "had to make a hard right turn to make it to the ramp[]" and "had to cross over the right-hand lane to get to the exit ramp." *Id.* at 50-51. Trooper Hand stated that Appellee also "cut across" the "gore" in the road that he described as the "V" where "the exit separates from the highway." *Id.* at 88, 97. Moreover, Trooper Hand testified that, while making the turn, Appellee "activated [his] left turn signal and made a right turn." *Id.* at 51. Trooper Hand agreed that

Appellee's vehicular movements were consistent with a last second decision to exit the roadway.[2] *Id.* at 84.

At the time that Trooper Hand made his observations, he was "on stationary patrol in the turn-around between 95 northbound and southbound, just north of the Woodhaven exit" and facing the same direction as Appellee, approximately a quarter of a mile away. *Id.* at 47, 101. Trooper Hand followed Appellee off the Woodhaven exit and was approximately 10 – 15 car lengths behind Appellee when Appellee made a left turn at a traffic light near the Franklin Mills Mall. *Id.* 52-53. At that time, Trooper Hand activated his emergency lights and pulled Appellee over. *Id.* at 53. In all, Trooper Hand estimated that he pulled Appellee over approximately a mile from where he first witnessed Appellee and after two to three minutes had elapsed. *Id.* at 91, 98. Trooper Hand further testified that he did not stop Appellee at the light near Franklin Mills Mall because there was no safe place to stop at the intersection. *Id.* at 98. Finally, Trooper Hand testified that he often observes traffic violations and makes stops up to four or five miles later, "for [his] safety and the safety of the person being stopped." *Id.* at 99.

---

[2] Based upon this testimony, we reject the trial court's finding that Appellee made the turn for emergency purposes. Appellee did not present evidence of an emergency and Trooper Hand testified that it appeared to be a last minute decision, but said nothing about an emergency.

The record is clear that Trooper Hand pulled Appellee over for making a right hand turn, over another lane of traffic, without properly using his turn signal in violation of 75 Pa.C.S.A. § 3334(a).[3]  Although Trooper Hand followed Appellee for approximately one mile after originally observing the turning infraction, this distance was reasonable.  Trooper Hand was stationary at the time of the violation, had to accelerate to catch up to Appellee, and then waited for a safe place to effectuate the traffic stop.  Moreover, "[l]aw enforcement officers are under no constitutional duty to call a halt to criminal investigation the moment they have the minimum evidence to establish probable cause."  *Kentucky v. King*, 131 S.Ct. 1849, 1860-1861 (U.S. 2011), *citing* *Hoffa v. United States*, 385 U.S. 293, 310 (1966).  We therefore reject the trial court's factual findings and hold as a matter of law that the trial court erred in concluding that too much time passed before Trooper Hand initiated the traffic stop.  Instead, the record establishes that Trooper Hand initiated the traffic stop in response to

_____

[3] "**(a) General rule.--**Upon a roadway no person shall turn a vehicle or move from one traffic lane to another or enter the traffic stream from a parked position unless and until the movement can be made with reasonable safety nor without giving an appropriate signal in the manner provided in this section."  75 Pa.C.S.A. § 3334(a).  "The signal shall be given during not less than the last 300 feet at speeds in excess of 35 miles per hour."  75 Pa.C.S.A. § 3334(b).  Here, Appellee not only used the wrong signal, but also, it appears, did not use that signal within 300 feet of the turn.

Appellee's turning violation and that the trooper clearly possessed valid probable cause to stop Appellee.

Although Trooper Hand had probable cause to pull Appellee over, that does not end our inquiry. As this Court has explained:

> When conducting a routine traffic stop, an officer may request a driver's license and vehicle registration, run a computer check and issue a citation. Upon producing a valid driver's license and registration, the driver must be allowed to proceed on his way, without being subject to further delay by police for additional questioning. In order to justify detaining the driver for further questioning, the officer must have reasonable suspicion of illegal transactions in drugs or of any other serious crime.

*Commonwealth v. Grosso*, 672 A.2d 792, 794 (Pa. Super. 1996) (internal alteration, citations, and quotation marks omitted).

We have described reasonable suspicion in the following manner:

> Reasonable suspicion is a less stringent standard than probable cause necessary to effectuate a warrantless arrest, and depends on the information possessed by police and its degree of reliability in the totality of the circumstances. . . . In assessing the totality of the circumstances, courts must also afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience and acknowledge that innocent facts, when considered collectively, may permit the investigative detention.
>
> The determination of whether an officer had reasonable suspicion . . . is an objective one, which must be considered in light of the totality of the circumstances.

*Clemens*, 66 A.3d at 379 (ellipsis and citation omitted).

Trooper Hand had reasonable suspicion to believe that criminal activity was afoot, *i.e.*, Appellee was driving under the influence of alcohol and/or controlled substances. Specifically, Trooper Hand testified that when he

- 10 -

approached the vehicle he "observed that [Appellee's] eyes were bloodshot" and he "smelled the odor of an alcoholic beverage and burnt marijuana emanating from the vehicle." N.T., 3/27/2014, at 54. Furthermore, Trooper Hand testified that his partner "pointed out that there [] appeared to be loose marijuana stems [] on the passenger seat and [a marijuana] blunt in the center cupholder console." *Id.* This information gave Trooper Hand reasonable suspicion to believe that Appellee was driving under the influence. *See Commonwealth v. Segida*, 985 A.2d 871, 879 (Pa. 2009). Therefore, Trooper Hand had lawful justification to request that Appellee perform various field sobriety tests and when Appellee failed those tests, Trooper Hand obtained probable cause to arrest Appellee for DUI. *See Commonwealth v. Cauley*, 10 A.3d 321, 327 (Pa. Super. 2010). Accordingly, Trooper Hand did not violate Appellee's right to be free from unreasonable searches and seizures. The trial court's conclusion to the contrary was an error of law and we therefore reverse the order granting Appellee's motion to suppress.

Order reversed. Case remanded for trial. Jurisdiction relinquished.

Panella, J., joins this memorandum.

Fitzgerald, J., notes dissent.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>1/28/2015</u>